JUDGE SCHEINDLIN




KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
Robin L. Cohen (rcohen@kasowitz.com)
Kenneth H. Frenchman (kfrenchman@kasowitz.com)
1633 Broadway
New York, NY 10019
212-506-1700
*Attorneys for Plaintiff MBIA Inc.*




**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

14 cv 1769 SAS

MBIA INC.,
Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, LEXINGTON INSURANCE COMPANY and WURTTEMBERGISCHE VERSICHERUNG AG,
Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff MBIA Inc. ("MBIA"), by and through its undersigned counsel, files this Complaint against Defendants Certain Underwriters at Lloyd's, London, Lexington Insurance Company, and Wurttembergische Versicherung AG ("Underwriters") and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for breach of contract and declaratory judgment with respect to MBIA's claims for insurance coverage under Financial Institutions Professional Indemnity Policies for MBIA's costs of defending and settling lawsuits against it and its subsidiaries relating to their financial guarantee business.

2. MBIA's business involves writing financial guarantee policies through its insurance company subsidiaries, certain of which guarantee timely interest and ultimate principal

payments on fixed income instruments in the event that a particular issuer defaults on its obligations.

3. MBIA, through its subsidiaries, generally wrote financial guarantee policies in connection with two categories of financial instruments: (i) public finance bonds (such as municipal bonds), and (ii) structured finance products (such as collateralized debt obligations and mortgage-backed securities).

4. Underwriters issued insurance policies to MBIA in which they undertook to provide insurance coverage for loss arising out of claims alleging wrongful acts by MBIA and its subsidiaries in the performance of any activities allowed under the law and regulations governing services they provide, such as providing financial guarantee insurance.

5. Beginning in July 2008, MBIA was named as a defendant in a number of lawsuits brought by public entities that purchased bond insurance from MBIA and other insurers alleging that MBIA and certain of its subsidiaries committed negligence and other wrongful acts in the sale and underwriting of financial guarantee insurance for plaintiffs' public finance bonds. Other lawsuits brought by public entities that purchased municipal derivatives from MBIA alleged that MBIA committed wrongful acts in the bidding for and sale of municipal derivatives to plaintiffs.

6. In February 2009, MBIA implemented a restructuring transaction by which it split its public finance bond guarantee business and its structured finance products guarantee business. A primary purpose of the transaction was to ameliorate the freezing out of municipal and state issuers from the public finance market by establishing a separate company insuring only domestic public finance obligations that could provide financial guarantee policies to these clients.

7. In the following months, MBIA and its insurer subsidiaries MBIA Insurance Corporation ("MBIA Insurance") and National Public Finance Guarantee Corporation (f/k/a MBIA Insurance Corporation of Illinois) ("National") were named as defendants in several lawsuits alleging that MBIA's restructuring was improper because it deprived plaintiffs of the benefits of the financial guarantee insurance plaintiffs purchased from MBIA.

8. Fortunately, MBIA had purchased a primary and an excess Financial Institutions Professional Indemnity Policy for claims made during the policy period from August 31, 2007 to August 31, 2008, and renewal policies for the policy period from August 31, 2008 to August 31, 2009 (collectively, the "Policies"). Under the terms of the Policies, Underwriters agreed to advance MBIA's defense costs and to cover MBIA's damages and/or settlements resulting from claims such as these underlying lawsuits.

9. Underwriters, however, refused to advance any amount towards MBIA's defense costs in the underlying lawsuits, contending that the Policies do not require Underwriters to make any payments until the final disposition of the claims.

10. Now, five to six years later, and despite the fact that many of the underlying claims have been resolved either by judgment in MBIA's favor or settlement, Underwriters continue to refuse to pay any of MBIA's defense costs or settlements, on the supposed basis that they are not obligated to pay MBIA on any underlying claim until all related underlying claims, including separately-litigated lawsuits that were filed years after the initial lawsuits, have been resolved.

11. Underwriters' position is directly contrary to the explicit language of the Policies.

12. Further, despite the fact that these underlying claims fall squarely within the terms of the Policies and MBIA has complied with all prerequisites to coverage thereunder,

Underwriters have wrongfully denied coverage for the underlying claims by ignoring the clear language of the insuring agreements of the Policies and raising inapplicable exclusions.

13. In this lawsuit, MBIA seeks damages for breach of contract against Underwriters for their refusal to pay MBIA's defense costs, damages and/or settlements that MBIA has paid or committed to pay resulting from the underlying claims.

14. Further, MBIA seeks declaratory relief to determine the existence and scope of Underwriters' obligations under the Policies to pay MBIA and other Assureds' Loss, including defense costs, settlements or other damages awards, for the underlying claims.

**PARTIES**

15. MBIA Inc. is a Connecticut corporation with its principal place of business in Armonk, New York. The Policies were issued to MBIA as the named Assured on behalf of, among others, MBIA's subsidiary companies.

16. Underwriters at Lloyd's, London Syndicates 2987 and 1274 are underwriters subscribing to the Policies. Upon information and belief, the members of Syndicates 2987 and 1274 are underwriters at Lloyd's of London with their principal place of business in London, England, and are not citizens of Connecticut or New York. Upon information and belief, the Syndicates, at all material times, have conducted substantial business within the State of New York, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in New York.

17. Lexington Insurance Company ("Lexington") is an insurer subscribing to the Policies. Upon information and belief, Lexington is a Delaware corporation with its principal place of business in Massachusetts. Upon information and belief, Lexington, at all material times, has conducted substantial business within the State of New York, including engaging in

the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in New York.

18. Wurttembergische Versicherung AG ("WurttVers") is an insurer subscribing to the Policies. Upon information and belief, WurttVers is incorporated in Germany with its principal place of business in Stuttgart, Germany. Upon information and belief, WurttVers, at all material times, has conducted substantial business within the State of New York, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in New York.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. This action is between a citizen of a State and citizens or subjects of foreign states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20. Under the terms of the Policies, Underwriters agreed to submit to the jurisdiction of any court of competent jurisdiction within the United States.

21. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

### I. MBIA's Financial Guarantee Insurance Business

22. MBIA's business includes writing financial guarantee policies through its insurer subsidiaries MBIA Insurance and National.

23. MBIA's insurer subsidiaries are monoline insurers, meaning they write only financial guarantee insurance policies and not property, casualty, life, disability or other forms of insurance.

24. Certain of these policies guarantee timely interest and ultimate principal payments on fixed income instruments in the event that a particular issuer defaults on its obligations.

25. As relevant to this action, MBIA, through its subsidiaries, wrote financial guarantee policies on two general categories of financial instruments: (i) public finance bonds (such as municipal bonds) and (ii) structured finance products (such as collateralized debt obligations and mortgage-backed securities).

## II. The Underlying Municipal Claims

26. Beginning in July 2008, MBIA was named as a defendant in a number of lawsuits brought by public entities, some of which made allegations against MBIA and others relating to the sale and underwriting of financial guarantee insurance for plaintiffs' public finance bonds and others of which made allegations against MBIA and others relating to the bidding for and sale of municipal derivatives to plaintiffs.

### A. The Bond Cases

27. On July 23, 2008, plaintiffs purporting to be public entities that purchased bond insurance from MBIA and other insurers filed the following two lawsuits against MBIA: (i) *City of Los Angeles v. Ambac Financial Group, Inc., et al.*, No. BC394943, Superior Court of the State of California, Los Angeles County, and (ii) *City of Stockton v. Ambac Financial Group, Inc., et al.*, No. CGC-08-477848, Superior Court of the State of California, San Francisco County. Other lawsuits were subsequently filed against MBIA, MBIA Insurance and National alleging similar claims. Most of these cases were coordinated in the proceeding *Ambac Bond Insurance Cases*, No. CJC-08-004555, Superior Court of the State of California, San Francisco County. Collectively, these lawsuits are referred to in this Complaint as the "Bond Cases."

28. Plaintiffs in the Bond Cases alleged, among other things, that bond insurers, including MBIA, participated in a scheme with credit rating agencies to maintain a so-called dual rating system under which public and non-profit entities like the plaintiffs were rated on a different scale than commercial entities and were improperly given lower credit ratings (indicating higher risk of default) than commercial entities with actual higher risks of default.

29. Plaintiffs in the Bond Cases further alleged that this unfair rating system compelled plaintiffs to purchase bond insurance from MBIA and other bond insurers in order to raise the credit rating on their issued bonds, which in turn lowered their costs of borrowing and increased the marketability of their bonds. According to plaintiffs, they had to pay substantially more to purchase bond insurance than they would have if they had been given higher credit ratings in consideration of their allegedly low rates of default.

30. Plaintiffs in the Bond Cases also alleged that the bond insurers, including MBIA, were negligent in insuring subprime mortgage and other structured finance instruments, and failed to disclose to plaintiffs the extent of their exposure to the subprime market. Plaintiffs alleged that they would not have purchased bond insurance policies if they knew the extent of the bond insurer defendants' structured finance business, and that they were damaged when the widespread failures of such structured finance instruments resulted in a downgrade of the bond insurer defendants' credit ratings.

31. In their complaints, plaintiffs in the Bond Cases alleged causes of action against MBIA that included (i) breach of the covenant of good faith and fair dealing, (ii) fraud, (iii) breach of contract, (iv) negligent misrepresentation, (v) negligence, (vi) unfair business practices, (vii) unjust enrichment, and (viii) violations of the California Cartwright Act.

32. The causes of action for breach of the covenant of good faith and fair dealing, negligent misrepresentation, negligence, and unjust enrichment were dismissed with prejudice in connection with MBIA's demurrers in July 2011. MBIA's special motion to strike the California Cartwright Act antitrust claims pursuant to California's anti-SLAPP statute was granted in March 2013, which decision is on appeal.

33. Plaintiffs in the Bond Cases sought relief from MBIA, including actual damages, attorneys' fees, and injunctive relief.

34. On March 11, 2010, the City of Phoenix ("Phoenix") filed a lawsuit against MBIA and two other bond insurers: *City of Phoenix v. Ambac Financial Group, Inc., et al.*, No. 2:10-cv-00555-TMB, United States District Court for the District of Arizona (the "Phoenix Case"). Phoenix alleged, among other things, that credit rating agencies improperly gave lower credit ratings to municipal bonds than to corporate bonds with identical or higher risks of default under a purported dual rating system. Phoenix alleged that MBIA and the other bond insurers unfairly discriminated against Phoenix by pricing their insurance policies based on those lower credit ratings in violation of Arizona's unfair discrimination insurance statute (A.R.S. § 20-448(c)), resulting in higher bond insurance premiums than were charged to corporate entities. Phoenix sought relief from MBIA, including compensatory damages.

**B. <u>The Derivatives Cases</u>**

35. On July 23, 2008, plaintiffs alleging to be public entities that invested in municipal derivatives with numerous financial institutions and insurers, including MBIA, filed the following two lawsuits: (i) *City of Los Angeles v. Bank of America, N.A., et al.*, No. BC394944, Superior Court of the State of California, Los Angeles County, and (ii) *City of Stockton v. Bank of America, N.A., et al.*, No. CGC-08-477851, Superior Court of the State of

California, San Francisco County. Other lawsuits were subsequently filed against MBIA alleging similar claims. Most of these cases were coordinated in the proceeding *In re Municipal Derivatives Antitrust Litigation*, No. 1950, U.S. Judicial Panel on Multidistrict Litigation. Collectively, these lawsuits are referred to in this Complaint as the "Derivatives Cases."

36. Plaintiffs in the Derivatives Cases alleged, among other things, that numerous financial institutions and insurers participated in a scheme to allocate the municipal derivatives market among themselves and rig the bidding system through which plaintiffs purchased municipal derivatives. Plaintiffs alleged that the defendants pre-selected who would win certain bids, communicated their bids to each other, and submitted sham "courtesy bids" to maintain the illusion of competition.

37. Plaintiffs in the Derivative Cases further alleged that they received lower interest rates and paid higher fees for municipal derivatives than they otherwise would have paid in a fair market, and were subject to higher risks than they otherwise would have faced in a competitive market.

38. In their complaints, the Derivatives Cases plaintiffs alleged causes of action against MBIA for violations of the Sherman Act and state antitrust laws of California, New York, and West Virginia.

39. Plaintiffs in the Derivatives Cases sought relief from MBIA, including actual damages, attorneys' fees, and injunctive relief.

40. MBIA has incurred millions of dollars in costs of defending the Bond Cases, the Phoenix Case and the Derivatives Cases (together, the "Municipal Claims").

41. MBIA has settled two of the Municipal Claims, paying approximately $1.2 million in settlement amounts. MBIA gave Underwriters notice of both settlements and

Underwriters agreed to waive any objection to the settlements based on consent. The remaining Municipal Claims are still pending against MBIA.

## III. The Underlying Transformation Claims

42. Prior to February 2009, MBIA's subsidiary MBIA Insurance issued financial guarantees on both public finance bonds and structured finance products. As a result of the financial crisis that began in 2007, the credit ratings of most companies in the financial guarantee industry, including MBIA Insurance, were downgraded by credit ratings agencies. Many of these companies, including MBIA, suspended the writing of new structured finance business by mid-2008.

43. The ratings downgrades prevented MBIA Insurance and others from writing new insurance in the municipal bond and other U.S. public finance markets, freezing out many municipal and state issuers from the public finance market.

44. In February 2009, with the approval of the New York Insurance Department, MBIA executed a series of transactions to restructure its businesses by separating its public finance insurance business and its structured finance insurance business into two separate insurance companies, which would enable MBIA to provide municipal and state issuers frozen out of the public finance market with financial guarantee policies, while also attracting capital investment to the benefit of the holding company and all policyholders. The transactions resulted in MBIA's public finance business being transferred to MBIA Insurance Corporation of Illinois, which became an indirect subsidiary of MBIA renamed National Public Finance Guarantee Corporation. MBIA's structured finance obligations remained with MBIA Insurance. The series of transactions that implemented this change is referred to in this Complaint as the "Transformation."

45. The purpose of the Transformation was to facilitate, during the ongoing financial crisis, the unfreezing of the public finance markets through the establishment of MBIA subsidiaries National and MBIA Insurance as separate, well-capitalized insurance companies insuring, respectively, domestic public finance obligations and structured finance products. By writing new public finance bond insurance business, the newly-created entity could achieve a triple-A rating and attract capital investment, strengthening the holding company to the benefit of all policyholders.

46. In the months following the Transformation, plaintiffs alleging to be holders of certain financial instruments, securities and/or obligations other than with respect to public finance obligations for which MBIA Insurance issued financial guarantee insurance brought several class action and individual lawsuits against MBIA, MBIA Insurance and National (the "Transformation Claims"). These lawsuits included: (i) *Aurelius Capital Master, Ltd., et al. v. MBIA Inc., et al.*, No. 1:09-cv-02242, United States District Court, Southern District of New York; (ii) *ABN Amro Bank N.V., et al. v. MBIA Inc., et al.*, No. 601475/2009, Supreme Court of the State of New York, New York County; and (iii) *ABN Amro Bank N.V., et al. v. Dinallo, et al.*, No. 601846/2009, Supreme Court of the State of New York, New York County.

47. Plaintiffs in the Transformation Claims alleged, among other things, that the Transformation was improper because it potentially impaired MBIA's ability to perform its obligations under, and deprived plaintiffs of the benefits of, the financial guarantee insurance plaintiffs purchased from MBIA.

48. Plaintiffs in the Transformation Claims alleged that the credit rating of MBIA Insurance was lowered dramatically after the announcement of the Transformation. According

to plaintiffs, they were damaged because that drop in credit rating resulted in a substantial decrease in the value of the structured finance instruments that MBIA Insurance guaranteed.

49. Further, plaintiffs in the Transformation Claims alleged that the Transformation left MBIA Insurance without the necessary assets to perform its obligations under and pay all of the claims under the structured finance guarantee policies. Plaintiffs asserted that MBIA improperly favored its public finance bond insurance clients over its structured finance clients in the implementation of the Transformation.

50. In their complaints, the Transformation Claims plaintiffs alleged claims against MBIA that included (i) actual fraudulent conveyance, (ii) constructive fraudulent conveyance, (iii) breach of the implied covenant of good faith and fair dealing, (iv) breach of contract, (v) unjust enrichment, (vi) injunctive relief, (vii) declaratory judgment, and (viii) specific performance.

51. Plaintiffs in the Transformation Claims sought relief from MBIA, including actual damages, attorneys' fees, and injunctive and declaratory relief.

52. MBIA has incurred tens of millions of dollars in costs in defending against the Transformation Claims, well in excess of the limit of liability of the Policies for the 2008-2009 policy year.

53. On September 10, 2012, several years after the Transformation Claims were filed, another similar lawsuit was filed against MBIA, MBIA Insurance and National – *CQS ABS Master Fund Ltd., et al. v. MBIA Inc., et al.*, No. 12-cv-6840, United States District Court for the Southern District of New York (the "CQS Claim").

54. On March 4, 2013, the New York Supreme Court rendered judgment in favor of MBIA in the Transformation Claim *ABN Amro Bank N.V., et al. v. Dinallo, et al.*, 962 N.Y.S.2d 854 (N.Y. Sup. Ct. 2013).

55. All of the remaining Transformation Claims, except the later-filed CQS Claim, have been settled and/or dismissed.

## IV. The Insurance Policies

56. In consideration of considerable premiums fully paid to cover precisely the type of damages at issue here, Underwriters sold the following Policies to MBIA:

(a) Primary Policy No. 07GPOM2520, with a policy period from August 31, 2007 to August 31, 2008 (the "07-08 Primary Policy");

(b) Excess Policy No. 07GPOM2521, with a policy period from August 31, 2007 to August 31, 2008 (the "07-08 Excess Policy" and, together with the 07-08 Primary Policy, the "07-08 Policies");

(c) Primary Policy No. 08GPOM2520, with a policy period from August 31, 2008 to August 31, 2009 (the "08-09 Primary Policy"); and

(d) Excess Policy No. 08GPOM2521, with a policy period from August 31, 2008 to August 31, 2009 (the "08-09 Excess Policy" and, together with the 08-09 Primary Policy, the "08-09 Policies").

57. The 07-08 Primary Policy and the 08-09 Primary Policy (together, the "Primary Policies") each have a limit of liability of $15 million above a $1 million retention.

58. The 07-08 Excess Policy and the 08-09 Excess Policy (together, the "Excess Policies") each have a limit of liability of $15 million excess of the Primary Policy covering the

same time period, and are subject to the same terms, exclusions, conditions and definitions as the Primary Policy covering the same time period.

59. Under the Primary Policies' Financial Institutions Professional Indemnity Policy Insuring Clause I, Underwriters agreed to "pay on the behalf of the Assureds for Loss resulting from any Claim first made during the Policy Period for a Wrongful Act in the performance of Professional Services."

60. "Loss" under the Primary Policies includes "settlements" and "reasonable and necessary legal fees and expenses."

61. A "Claim" as defined in the Primary Policies includes "any judicial, administrative proceeding (including any appeal therefrom) and written demands for monetary, non-monetary or injunctive relief initiated against any of the Assureds in which they may be subjected to a binding adjudication of liability or any settlement agreed by Underwriters for damages or other relief."

62. "Wrongful Act" is defined in the Primary Policies to mean "any actual or alleged error, omission or act or breach of professional duty in rendering or failing to render the Professional Services."

63. Covered "Professional Services" broadly include "any past or present activities allowed under the law and regulations governing services provided by the Assureds which are or were performed for [MBIA and/or its Subsidiaries] and, in addition those activities, which are declared in the Application Form or which are commenced during the Policy Period and any other related services thereto."

## V. Underwriters' Denial of MBIA's Claims for Coverage

64. MBIA properly and timely provided Underwriters with notice of the Municipal Claims and the Transformation Claims as they became known to MBIA and requested that Underwriters advance MBIA's costs of defending the Claims.

65. In correspondence dated January 23, 2009 and March 24, 2011, and in other communications with MBIA, Underwriters refused to pay MBIA for costs and expenses it incurred in defending the Municipal Claims, and reserved their rights with respect to coverage for the Municipal Claims.

66. In correspondence dated February 24, 2010 and April 12, 2011, and in other communications with MBIA, Underwriters refused to pay MBIA for costs and expenses it incurred in defending the Transformation Claims, and reserved their rights with respect to coverage for the Transformation Claims.

67. With respect to both the Municipal Claims and the Transformation Claims, Underwriters asserted that they were not required to make any payments for defense costs "until the final disposition of the Claim." Underwriters cited to a provision of the Primary Policies that states: "Underwriters shall reimburse Loss only upon the final disposition of *any* Claim; provided, however, that Underwriters at their sole discretion agree to advance Costs, Charges and Expenses every 90 days." (Emphasis added.)

68. Under this provision, Underwriters are obligated to reasonably and in good faith advance all of MBIA's costs of defense with respect to each of the individual Municipal and Transformation Claims every 90 days after such costs have been incurred or, in any event and at the very latest, to pay such costs no later than at the time each individual Claim has been finally resolved.

69. Many of the Claims have reached final disposition, including by means of a judgment in favor of MBIA in one of the Transformation Claims, and settlements and/or dismissals in many of the remaining Claims. In fact, *all* of the initial Transformation Claims have been resolved, with MBIA incurring defense costs well in excess of the policy limits for the 08-09 Policies.

70. Despite this fact, and in breach of the clear policy language, Underwriters continue to refuse to pay any of MBIA's defense or settlement costs for any of the Claims.

71. Underwriters have based that refusal on the assertion that MBIA is not entitled to payment with respect to any Claim until all related Claims are finally resolved.

72. Underwriters also have asserted that MBIA is not entitled to defense or indemnity with respect to any of the Municipal and Transformation Claims because the Claims allege acts by MBIA that are not "allowed under the law and regulations governing services provided by" MBIA.

73. Underwriters have taken this position despite the fact that, among other things, (i) the only court to finally adjudicate the issue explicitly held that MBIA's actions in the Transformation were permitted under the law, (ii) the New York Insurance Department authorized the Transformation under specific provisions of the Insurance Law, and (iii) the allegations in the Municipal Claims, which MBIA strongly dispute, relate to standard market practices by other defendants and MBIA.

74. Underwriters have further asserted that inapplicable exclusions in the Primary Policies preclude coverage for the Municipal and Transformation Claims.

75. Based on those false assertions, Underwriters have failed to advance or otherwise pay MBIA for any of the defense costs it has incurred in connection with the Municipal and Transformation Claims.

**FIRST CAUSE OF ACTION**

**(Breach of Contract – Duty to Pay Defense Costs for the Municipal Claims)**

76. MBIA repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

77. Pursuant to the terms of the Policies, Underwriters agreed to pay Loss, including Costs, Charges and Expenses, on behalf of MBIA resulting from any Claim for a Wrongful Act in the performance of Professional Services, as those terms are defined in the Primary Policies.

78. Pursuant to the terms of the Policies, Underwriters are obligated to reasonably and in good faith advance all of MBIA's costs of defense with respect to each of the individual Municipal Claims every 90 days after such costs have been incurred or, in any event and at the very latest, to pay such costs no later than at the time each individual Claim has been finally resolved.

79. The Municipal Claims constitute covered Claims under the terms of the Policies, and there are no applicable provisions that exclude coverage.

80. MBIA has incurred Costs, Charges and Expenses exceeding any applicable retention amounts in the Primary Policies resulting from the Municipal Claims, including Claims that have been finally dismissed as against MBIA and its Subsidiaries.

81. That Loss is due and payable under the Policies.

82. Underwriters have failed to fulfill their obligations to pay MBIA's Costs, Charges and Expenses resulting from the Municipal Claims.

83. MBIA has complied with all terms, conditions and prerequisites to coverage set forth in the Policies, or has been excused from compliance with such terms, conditions or prerequisites as a result of Underwriters' breaches and/or other conduct.

84. As a result of Underwriters' breaches of their obligations to cover Costs, Charges and Expenses resulting from the Municipal Claims, MBIA has suffered and continues to suffer damages in an amount to be determined in this action.

**SECOND CAUSE OF ACTION**

**(Breach of Contract – Duty to Pay Defense Costs for the Transformation Claims)**

85. MBIA repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

86. Pursuant to the terms of the Policies, Underwriters agreed to pay Loss, including Costs, Charges and Expenses, on behalf of MBIA resulting from any Claim for a Wrongful Act in the performance of Professional Services, as those terms are defined in the Primary Policies.

87. Pursuant to the terms of the Policies, Underwriters are obligated to reasonably and in good faith advance all of MBIA's costs of defense with respect to each of the individual Transformation Claims every 90 days after such costs have been incurred or, in any event and at the very latest, to pay such costs no later than at the time each individual Claim has been finally resolved.

88. The Transformation Claims constitute covered Claims under the terms of the Policies, and there are no applicable provisions that exclude coverage.

89. MBIA has incurred Costs, Charges and Expenses exceeding any applicable retention amounts in the Primary Policies resulting from the Transformation Claims, including Claims that have been finally dismissed as against MBIA and its Subsidiaries.

90. That Loss is due and payable under the Policies.

91. Underwriters have failed to fulfill their obligations to pay MBIA's Costs, Charges and Expenses resulting from the Transformation Claims.

92. MBIA has complied with all terms, conditions and prerequisites to coverage set forth in the Policies, or has been excused from compliance with such terms, conditions or prerequisites as a result of Underwriters' breaches and/or other conduct.

93. As a result of Underwriters' breaches of their obligations to cover Costs, Charges and Expenses resulting from the Transformation Claims, MBIA has suffered and continues to suffer damages in an amount to be determined in this action.

## THIRD CAUSE OF ACTION

### (Breach of Contract – Duty to Indemnify for the Municipal Claims)

94. MBIA repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

95. Pursuant to the terms of the Policies, Underwriters agreed to pay Loss, including damages and/or settlements, on behalf of MBIA resulting from any Claim for a Wrongful Act in the performance of Professional Services, as those terms are defined in the Primary Policies.

96. The Municipal Claims constitute covered Claims under the terms of the Policies, and there are no applicable provisions that exclude coverage.

97. MBIA has incurred Loss, including amounts paid in settlement, exceeding any applicable retention amounts in the Primary Policies resulting from the Municipal Claims, including Claims that have been finally dismissed as against MBIA and its Subsidiaries.

98. That Loss is due and payable under the Policies.

99. Underwriters have failed to fulfill their obligations to pay MBIA's damages and/or settlements resulting from the Municipal Claims.

100. MBIA has complied with all terms, conditions and prerequisites to coverage set forth in the Policies, or has been excused from compliance with such terms, conditions or prerequisites as a result of Underwriters' breaches and/or other conduct.

101. As a result of Underwriters' breaches of their obligations to cover damages and/or settlements resulting from the Municipal Claims, MBIA has suffered and continues to suffer damages in an amount to be determined in this action.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief – Duty to Pay Defense Costs for the Municipal Claims)**

102. MBIA repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

103. Pursuant to the terms of the Policies, Underwriters agreed to pay Loss, including Costs, Charges and Expenses, on behalf of MBIA resulting from any Claim for a Wrongful Act in the performance of Professional Services, as those terms are defined in the Primary Policies.

104. Pursuant to the terms of the Policies, Underwriters are obligated to reasonably and in good faith advance all of MBIA's costs of defense with respect to each of the individual Municipal Claims every 90 days after such costs have been incurred or, in any event and at the very latest, to pay such costs no later than at the time each individual Claim has been finally resolved.

105. The Municipal Claims constitute covered Claims under the terms of the Policies, and there are no applicable provisions that exclude coverage.

106. Upon information and belief, Underwriters dispute their legal obligations to advance or otherwise pay MBIA or any other Assureds' Costs, Charges and Expenses resulting from the Municipal Claims.

107. Further, upon information and belief, and in contravention of their obligations, Underwriters have taken or may take the position that they are not obligated to pay Costs, Charges and Expenses on behalf of MBIA until final disposition of all related Claims.

108. The controversies between MBIA and Underwriters are ripe for judicial decision. A justiciable controversy exists between MBIA and Underwriters regarding the existence and scope of Underwriters' obligations under the Policies to pay MBIA and other Assureds' Costs, Charges and Expenses resulting from the Municipal Claims.

109. Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment determining the parties' rights, duties and obligations under the Policies with respect to coverage for Costs, Charges and Expenses resulting from the Municipal Claims.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief – Duty to Pay Defense Costs for the Transformation Claims)**

110. MBIA repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

111. Pursuant to the terms of the Policies, Underwriters agreed to pay Loss, including Costs, Charges and Expenses, on behalf of MBIA resulting from any Claim for a Wrongful Act in the performance of Professional Services, as those terms are defined in the Primary Policies.

112. Pursuant to the terms of the Policies, Underwriters are obligated to reasonably and in good faith advance all of MBIA's costs of defense with respect to each of the individual Transformation Claims every 90 days after such costs have been incurred or, in any event and at

the very latest, to pay such costs no later than at the time each individual Claim has been finally resolved.

113. The Transformation Claims constitute covered Claims under the terms of the Policies, and there are no applicable provisions that exclude coverage.

114. Upon information and belief, Underwriters dispute their legal obligations to advance or otherwise pay MBIA or any other Assureds' Costs, Charges and Expenses resulting from the Transformation Claims.

115. Further, upon information and belief, and in contravention of their obligations, Underwriters have taken or may take the position that they are not obligated to pay Costs, Charges and Expenses on behalf of MBIA until final disposition of all related Claims.

116. The controversies between MBIA and Underwriters are ripe for judicial decision. A justiciable controversy exists between MBIA and Underwriters regarding the existence and scope of Underwriters' obligations under the Policies to pay MBIA and other Assureds' Costs, Charges and Expenses resulting from the Transformation Claims.

117. Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment determining the parties' rights, duties and obligations under the Policies with respect to coverage for Costs, Charges and Expenses resulting from the Transformation Claims.

## SIXTH CAUSE OF ACTION

## (Declaratory Relief – Duty to Indemnify for the Municipal Claims)

118. MBIA repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

119. Pursuant to the terms of the Policies, Underwriters agreed to pay Loss, including damages and/or settlements, on behalf of MBIA resulting from any Claim for a Wrongful Act in the performance of Professional Services, as those terms are defined in the Primary Policies.

120. The Municipal Claims constitute covered Claims under the terms of the Policies, and there are no applicable provisions that exclude coverage.

121. Upon information and belief, Underwriters dispute their legal obligations to pay MBIA or any other Assureds' damages and/or settlements resulting from the Municipal Claims.

122. Further, upon information and belief, and in contravention of their obligations, Underwriters have taken or may take the position that they are not obligated to pay damages and/or settlements on behalf of MBIA until final disposition of all related Claims.

123. The controversies between MBIA and Underwriters are ripe for judicial decision. A justiciable controversy exists between MBIA and Underwriters regarding the existence and scope of Underwriters' obligations under the Policies to pay MBIA and other Assureds' damages and/or settlements resulting from the Municipal Claims.

124. Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment determining the parties' rights, duties and obligations under the Policies with respect to coverage for damages and/or settlements resulting from the Municipal Claims.

**PRAYER FOR RELIEF**

WHEREFORE, MBIA prays for relief as follows:

(a) On the First Cause of Action, MBIA requests that the Court enter judgment against Underwriters, awarding MBIA compensatory and consequential damages in an amount to be determined in this action;

(b) On the Second Cause of Action, MBIA requests that the Court enter judgment against Underwriters, awarding MBIA compensatory and consequential damages in an amount to be determined in this action;

(c) On the Third Cause of Action, MBIA requests that the Court enter a judgment against Underwriters, awarding MBIA compensatory and consequential damages in an amount to be determined in this action;

(d) On the Fourth Cause of Action, MBIA requests that the Court enter a declaratory judgment in favor of MBIA and against Underwriters, declaring that Underwriters are obligated to pay on behalf of MBIA Costs, Charges and Expenses resulting from the Municipal Claims in excess of any applicable Retentions and up to any applicable limits of liability of the Policies, every 90 days after such Costs, Charges and Expenses have been incurred or, in the alternative, no later than at the time each separate Claim has been finally resolved;

(e) On the Fifth Cause of Action, MBIA requests that the Court enter a declaratory judgment in favor of MBIA and against Underwriters, declaring that Underwriters are obligated to pay on behalf of MBIA Costs, Charges and Expenses resulting from the Transformation Claims in excess of any applicable Retentions and up to any applicable limits of liability of the Policies, every 90 days after such Costs, Charges and Expenses have been incurred or, in the alternative, no later than at the time each separate Claim has been finally resolved;

(f) On the Sixth Cause of Action, MBIA requests that the Court enter a declaratory judgment in favor of MBIA and against Underwriters, declaring that Underwriters are obligated to pay on behalf of MBIA damages and/or settlements resulting from the Municipal Claims in excess of any applicable Retentions and up to any applicable limits of liability of the Policies, no later than at the time each separate Claim has been finally resolved;

(g) On all Causes of Action, MBIA requests that the Court award MBIA all costs incurred as a consequence of having to prosecute this lawsuit, including attorneys' fees, as well as pre-judgment and post-judgment interest; and

(h) Additionally, MBIA requests such other and further relief as the Court deems just and proper.

**JURY DEMAND**

MBIA hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
March 14, 2014

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: ______________________________

Robin L. Cohen
Kenneth H. Frenchman
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
rcohen@kasowitz.com
kfrenchman@kasowitz.com

*Attorneys for Plaintiff MBIA Inc.*