UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MBIA INC.,<br><br>     Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, LEXINGTON INSURANCE COMPANY and WURTTEMBERGISCHE VERSICHERUNG AG,<br><br>     Defendants. | No. 14-cv-1769-SAS |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

CLYDE & CO US LLP
*Attorneys for Defendants Certain Underwriters
at Lloyd's, London, Lexington Insurance Company
and Wurttembergische Versicherung AG*
405 Lexington Avenue
New York, New York 10174
(212)710-3900

Edward J. Kirk
Theresa Biedermann
Bryce Guingrich

  *Of Counsel*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

    A.  The Professional Indemnity Policies ..................................................... 2

    B.  The Underlying Actions ......................................................................... 6

        1.  The Transformation Cases ............................................................. 6

        2.  The Bond Cases ............................................................................. 8

        3.  The Derivatives Cases ................................................................. 10

ARGUMENT ....................................................................................................... 12

    I.    THE COMPLAINT FAILS TO STATE A CLAIM AND MUST BE
         DISMISSED UNDER FRCP 12(B)(6) ........................................................ 12

        A.   There is No Duty to Defend or Advance and Underwriters Have No Obligation to
            Reimburse Any Loss Until Final Disposition ....................................... 13

        B.   There Has Not Been a Final Disposition of a Claim .............................. 15

    II.   THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER
         JURISDICTION UNDER FRCP 12(B)(1) .................................................. 18

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)....................................................................................12

Cali v. Merrimack Mut. Fire Ins. Co.,
    841 N.Y.S.2d 128 (2d Dep't 2007)......................................................13

Caporino v. Travelers Ins. Co.,
    62 N.Y.2d 234 (1984).................................................................................13

Cargill Int'l S.A. v. M/T Pavel Dybenko,
    991 F.2d 1012 (2d Cir. 1993)................................................................19

Cnty. of Columbia v. Cont'l Ins. Co.,
    83 N.Y.2d 618 (1994).................................................................................13

Consol. Edison Co. v. Allstate Ins. Co.,
    98 N.Y.2d 208 (2002).................................................................................13

Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,
    261 F. Supp. 2d 293 (S.D.N.Y. 2003)...............................................20

E.R. Squibb & Sons, Inc. v. Lloyd's & Companies,
    241 F.3d 154 (2d Cir. 2001)...................................................................19

ERC Indus., Inc. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.),
    136 B.R. 59 (S.D.N.Y. 1992).................................................................14

Erdman v. Eagle Ins. Co.,
    658 N.Y.S.2d 463 (3d Dep't 1997)......................................................15

George Muhlstock & Co. v. Am. Home Assurance Co.,
    502 N.Y.S.2d 174 (1st Dep't 1986) ....................................................15

Health-Chem Corp. v. Nat'l Union Fire Ins. Co.,
    559 N.Y.S.2d 435 (N.Y. Sup. Ct. 1990) ..........................................14

King's Gym Complex, Inc. v. Philadelphia Indem. Ins. Co.,
    314 F. App'x 342 (2d Cir. 2008).........................................................20

Ocean Gardens Nursing Facility, Inc. v. Travelers Companies, Inc.,
    936 N.Y.S.2d 323 (2d Dep't 2012)......................................................19

Pfizer, Inc. v. Stryker Corp.,
    385 F. Supp. 2d 380 (S.D.N.Y. 2005)................................................17

Raymond Corp. v. Nat'l Union Fire Ins. Co.,
    5 N.Y.3d 157 (2005) ............................................................................13

Roth v. Jennings,
    489 F.3d 499 (2d Cir. 2007).................................................................12

Seneca Ins. Co. v. Kemper Ins. Co.,
    No. 02-cv-10088-PKL, 2004 WL 1145830 (S.D.N.Y. May 21, 2004) .................................16

Servidone Const. Corp. v. Sec. Ins. Co.,
    64 N.Y.2d 419 (1985) ..........................................................................15

Sirob Imports, Inc. v. Peerless Ins. Co.,
    958 F. Supp. 2d 384 (E.D.N.Y. 2013) .........................................18, 19

Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.,
    73 F.3d 1178 (2d Cir. 1995)................................................................14

Zahler v. Twin City Fire Ins. Co.,
    No. 04-cv-10299-LAP, 2006 WL 846352 (S.D.N.Y. Mar. 31, 2006) .....................................13

Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi,
    215 F.3d 247 (2d Cir. 2000).................................................................19

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ..............................................1, 2, 18, 19, 20

Federal Rule of Civil Procedure 12(b)(6) ..............................................1, 2, 12, 18

Defendants Certain Underwriters at Lloyd's, London, Lexington Insurance Company and Wurttembergische Versicherung AG (collectively "Underwriters"), through their counsel, Clyde & Co US LLP, and upon the annexed Declaration of James Manners Wood (the "Wood Declaration") dated April 25, 2014 and the exhibits attached thereto, will move this Court for an order, pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("FRCP"), dismissing the Complaint in its entirety and for such other relief, in law and in equity, to which they are entitled.

## PRELIMINARY STATEMENT

MBIA attempts to improperly broaden the bargained for coverage provided by the indemnity policies at issue by requiring Underwriters to make advance payments for defense costs and settlements prior to the final disposition of a Claim.  The policies unambiguously and explicitly state that there is no duty to defend and, except "at their sole discretion", Underwriters shall reimburse costs and other Loss only upon the final disposition of the Claim.  Coverage under the policies is determined by the narrow duty to indemnify after the final disposition of the Claim, rather than a duty to defend or advance based on the mere potential for coverage.

MBIA seeks coverage for numerous lawsuits it submitted as three separate Claims described as the Bond, Derivatives and Transformation Cases.  MBIA submitted the underlying lawsuits as part of the same Claim where they allege the same Wrongful Acts or Interrelated Wrongful Acts and are therefore deemed to be a single Claim subject to one retention under the terms of the policies.  For purposes of determining whether there has been a final disposition of a Claim, however, MBIA now argues that it can treat each of the underlying actions as separate Claims.  MBIA's strained and implausible interpretation of coverage is contrary to applicable

New York law, the express provisions of the policies and MBIA's own previous reading of the coverage.

Pursuant to the express provisions of the policies, Underwriters have no obligation to reimburse any Loss until there has been a final disposition of all underlying lawsuits deemed to be a single Claim. The Complaint acknowledges that certain of the Bond Cases, Derivative Cases and Transformation Cases remain pending. As there has not been a final disposition of a Claim, Underwriters are not obligated to reimburse MBIA for costs or any other Loss. The Complaint should be dismissed pursuant to Rule 12(b)(6) as it fails to state a Claim upon which relief can be granted. The Complaint should also be dismissed pursuant to Rule 12(b)(1) because MBIA's claim for coverage and its action against Underwriters are not ripe for adjudication and the Court does not have subject matter jurisdiction.

## FACTUAL BACKGROUND

### A.    The Professional Indemnity Policies

Syndicate 2987, Wurttembergische Versicherung AG and Lexington Insurance Company issued the following Financial Institutions Professional Indemnity and Financial Institutions Bond/Electronic Computer Crime Policies to MBIA effective for the period August 31, 2007 to August 31, 2008 (the "07-08 Policy Period"): (i) Primary Policy No. 07GPOM2520 (the "07-08 Primary Policy"), which with respect to the Financial Institutions Professional Indemnity Section (the "PI Coverage") provides a limit of $15 million any one Claim and in the aggregate, inclusive of defense costs, subject to a retention of $1 million each and every Claim including costs and expenses; and (ii) Excess Policy No. 07GPOM2521 (the "07-08 Excess Policy", and collectively with the 07-08 Primary Policy, the "07-08 Policies"), which with regard to the PI Coverage provides a limit of $15 million any one Claim and in the aggregate, inclusive of

defense costs, excess of the 07-08 Primary Policy's limit of $15 million any one Claim and in the aggregate. Wood Decl., Apr. 25, 2014, at ¶¶ 2, 3, Ex. 1 & 2.

Syndicates 2987 and 1274 and Lexington Insurance Company issued the following Financial Institutions Professional Indemnity and Financial Institutions Bond/Electronic Computer Crime Policies to MBIA effective for the period August 31, 2008 to August 31, 2009 (the "08-09 Policy Period"): (i) Policy No. 08GPOM2520 (the "08-09 Primary Policy"), which with regard to the PI Coverage, provides a limit of $15 million any one Claim and in the aggregate, inclusive of defense costs, subject to a retention of $1 million each and every Claim including costs and expenses; and (ii) Excess Policy No. 08GPOM2521 (the "08-09 Excess Policy", and collectively with the 08-09 Primary Policy, the "08-09 Policies"), which with regard to the PI Coverage provides a limit of $15 million any one Claim and in the aggregate, inclusive of defense costs, excess of the 08-09 Primary Policy's limit of $15 million any one Claim and in the aggregate. Wood Decl. ¶¶ 4, 5, Ex. 3 & 4.

The 08-09 Primary Policy includes an endorsement entitled the "Tie In of Limits Endorsement", which provides as follows:

> It is hereby understood and agreed that the combined total aggregate limit of liability that the insurer shall be liable for all loss, arising out of all claims made against all Assureds under all insurance covers combined involving both this policy and also policy Number 07GPOM2520 [the 07-08 Primary Policy] shall be USD15,000,000 in respect of Section 1 and USD15,000,000 in respect of Section 2.[1]

> It is further understood and agreed that this endorsement shall not be construed to increase the Limit of Liability as shown in the Schedule.

Wood Decl., Ex. 3, at Endorsements, pp. 4 of 5.

---

[1] Section 1 of the 08-09 Policies provides Professional Indemnity coverage, and Section 2 of the 08-09 Policies provides Financial Institution Bond and Electronic Computer Crime coverage. Wood Decl., Ex. 3.  MBIA does not seek coverage under Section 2.

The 08-09 Excess Policy includes a nearly identical "Tie In of Limits Endorsement" except that it refers to the 07-08 Excess Policy, rather than the 07-08 Primary Policy. Wood Decl., Ex. 4, at Endorsements, pp. 7 of 9.

Pursuant to the Tie-In of Limits Endorsements, the combined total aggregate limit under the 07-08 Primary Policy and 08-09 Primary Policy shall not be more than $15 million, and the combined total aggregate limit under the 07-08 Excess Policy and 08-09 Excess Policy shall not be more than $15 million. Wood Decl., Ex. 3, at Endorsements, pp. 4 of 5; Ex. 4, at Endorsements, pp. 7 of 9.

The Policies' Insuring Clauses provide that "Underwriters shall pay on behalf of the **Assureds**[2] for **Loss** resulting from any **Claim** first made during the **Policy Period** for a **Wrongful Act** in the performance of **Professional Services**." Wood Decl., Ex. 1 & 3, at PI Coverage § I.  The Primary Policies define "Wrongful Act" to mean "any actual or alleged error, omission or act or breach of professional duty in rendering or failing to render the **Professional Services**." Id. at § II.N.  "Professional Services" is defined as "any past or present activities allowed under the law and regulations governing services provided by the **Assureds** which are or were performed by the **Company** and, in addition to those activities, which are declared in the **Application Form** or which are commenced during the **Policy Period** and any other related services thereto." Id. at § II.L.

Paragraph C of Section IV, Limit of Liability, Retentions and Date of Claim, of the PI Coverage of the Policies provides that:

> More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times:

---

[2] Bold terms are defined in the Policies.

4

(1)     the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made, or

(2)     the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Clause VI.B [the Notification provision].

Id. at § IV.C. (emphasis added).[3]

"Interrelated Wrongful Acts" is defined in the Policies to mean "**Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions." Id. at § II.H.  Thus, all Claims involving the same Wrongful Act or Wrongful Acts with a common nexus of any fact or circumstance are deemed a single Claim under the Policies.

Further, paragraph F of Section IV of the PI Coverage of the Policies provides that "Underwriters shall reimburse **Loss** [which includes Costs, Charges and Expenses] only upon the final disposition of any **Claim**; provided, however, that Underwriters at their sole discretion agree to advance **Costs, Charges and Expenses** every 90 days." Id. at § IV.F. (emphasis added)

The Declarations and Section V, Settlements and Defense, of the Policies provide that Underwriters do not have a duty to defend any of the Assureds. Id. at preamble, pp. 2, and § V.B.

Section X, Assignments and Actions Against Underwriters, of the Policies provides that "[n]o action shall lie against Underwriters unless, as a condition precedent thereto, the **Assureds** have fully complied with all of the terms of this Policy, nor until the amount of the **Assureds'** obligation to pay shall have been fully and finally determined either by judgement against them or by written agreement between them, the claimant and Underwriters..." Id. at § X.

---

[3] "**Claim** means any judicial, administrative proceeding (including appeal therefrom) and written demands for monetary, non-monetary or injunctive relief initiated against any of the **Assureds** in which they may be subjected to a binding adjudication of liability or any settlement agreed by Underwrites for damages or other relief." Wood Decl., Ex. 1 & 3, at PI Coverage § II.C.

B.      **The Underlying Actions**

MBIA seeks coverage under the Policies for certain costs and settlements it purportedly incurred in numerous underlying actions that it alleges in its Complaint have similar allegations and can be categorized according to their common nexus of facts and circumstances as follows: (i) the Bond Cases (Compl. ¶¶ 27-34); (ii) the Derivatives Cases (Id. ¶¶ 35-41), and (iii) the Transformation Cases (Id. ¶¶ 42-55).  MBIA submitted all of the Bond Cases as a single Claim under the 07-08 Policies (Wood Decl. ¶ 11), all of the Derivative Cases as a single Claim under the 07-08 Policies (Id. ¶ 13), and all of the Transformation Cases as a single Claim under the 08-09 Policies (Id. ¶ 8).

1.      **The Transformation Cases**

By letter dated March 16, 2009, MBIA provided notice under the 08-09 Policies of a lawsuit styled Aurelius Capital Master, Ltd., et al. v. MBIA Inc., MBIA Insurance Corporation, and MBIA Insurance Corporation of Illinois filed on March 11, 2009 in the United States District Court for the Southern District of New York (the "Aurelius Action"). Compl. ¶ 46, 64; Wood Decl. ¶ 6.  MBIA subsequently provided notice under the 08-09 Policies of a number of related lawsuits.[4] Compl. ¶ 46, 53, 64; Wood Decl. ¶ 7.

---

[4] In addition to the Aurelius Action, MBIA submitted the following Transformation Cases under the 08-09 Policies: (i) Third Avenue Trust, et al. v. MBIA Insurance Corp. and MBIA Insurance Corp. of Illinois, filed on March 31, 2009 in Delaware state court (the "Third Avenue Action"); (ii) ABN AMRO Bank N.V., et al. v. MBIA, Inc., filed on May 13, 2009 in New York state court (the "ABN AMRO Action");  (iii) an Article 78 Petition styled ABN AMRO Bank N.V., et al. v. Eric Dinallo, et al., filed on June 15, 2009 in New York state court (the "Article 78 Petition"); (iv) CQS ABS Master Fund Ltd., et al. v. MBIA, Inc., et al. filed on September 10, 2012 in the United States District Court for the Southern District of New York (the "CQS Action"); (v) Broadbill Partners LP, et al. v. MBIA, Inc., et al filed on November 8, 2012 in New York state court (the "Broadbill Action"); (vi) Bank of America Corporation v. MBIA, Inc., et al. filed on December 13, 2012 in New York state court (the "Bank of America Action"); and (vii) MBIA, Inc. v. Bank of America Corporation, et al. filed on February 7, 2013 in New York state court (the "MBIA BofA Action") (collectively with the Aurelius Action, the "Transformation Cases"). Wood Decl. ¶ 7.

The Transformation Cases are brought against MBIA, MBIA Insurance and/or MBIA Illinois, now known as National Public Finance Guarantee Corp. ("National"), and arise from MBIA's February 18, 2009 restructuring of MBIA Insurance (the "Restructuring"). Compl. ¶¶ 44-46.   According to the plaintiffs, in the Restructuring, MBIA stripped approximately $5.4 billion in assets from MBIA Insurance for no consideration, and placed these assets into another one of its subsidiaries, MBIA Illinois. See Compl. ¶ 44.   As an alleged result, MBIA Illinois became a viable entity, while MBIA Insurance was left gutted and unable to honor present and future obligations to policyholders under structured finance policies. See Compl. ¶¶ 47-49. Further, through the Restructuring, MBIA allegedly insulated MBIA Illinois from MBIA Insurance's obligations and deprived policyholders of recoveries under policies they purchased from MBIA Insurance.   The plaintiffs contend that the Assureds engaged in the Restructuring to benefit MBIA, its executives and other parties, and that the Assureds knew that the Restructuring would harm the plaintiffs.   The plaintiffs generally seek to reverse the Restructuring and/or compel MBIA, MBIA Insurance and MBIA Illinois to comply with contractual obligations under structured finance insurance policies and notes issued by MBIA Insurance. See Compl. ¶¶ 50, 51.

The Aurelius Action, ABN AMRO Action, Article 78 Proceeding, and CQS Action are brought by purchasers or beneficiaries of insurance policies issued by MBIA Insurance for various "structured finance" securities.   The Bank of America and Third Avenue Actions are brought by holders of notes issued by MBIA Insurance before the Restructuring occurred and allege that MBIA's conveyance of its assets to another subsidiary violated the terms of their notes.

The Bank of America Action also generally alleges that following the Restructuring, MBIA took another step to further insulate itself from MBIA Insurance by initiating a "Consent Solicitation" whereby MBIA improperly amended indentures of MBIA corporate notes by substituting National for MBIA Insurance to avoid triggering the default provision and automatic acceleration of the principal value of the notes in the event that MBIA Insurance was placed into rehabilitation or liquidation.  Further, Bank of America alleges that MBIA tortiously interfered with its tender offer to buy all of the notes in exchange for par value.  Bank of America seeks, among other things, an order declaring that the indenture amendment is invalid.

In the Broadbill Action, investors in securities issued by MBIA allege that MBIA employed a two-part scheme to wrongfully strip billions of dollars in assets from MBIA Insurance and outside investors for its own benefit.  First, MBIA allegedly caused MBIA Insurance to wilfully breach contractual obligations under certain put option agreements and wrongfully obtain $400 million in cash from certain trusts, leaving holders of the trust securities with shares of preferred stock of the company worth far less.  Second, MBIA implemented the fraudulent Restructuring.  The plaintiffs seek to reverse the Restructuring and all associated fraudulent conveyances and rescission of the put option agreements.

MBIA seeks coverage for the Transformation Cases as a single Claim under the 08-09 Policies, and acknowledges in its Complaint that at least one of the Transformation Cases, the CQS Action, remains pending. Compl. ¶ 55.

### 2.   The Bond Cases

On August 18, 2008, MBIA provided notice under the 07-08 Policies of two lawsuits styled City of Los Angeles v. Ambac Financial Group, Inc. et al. and City of Stockton v. Ambac Financial Group, Inc., et al. (the "Initial Bond Cases"), filed on July 23, 2008 in California state

court against MBIA, MBIA Insurance, MBIA Illinois and five other bond insurers (together with the MBIA Defendants, the "Bond Insurer Defendants"), as well as John Kissane, a director of MBIA, and Neil Pack, a director of defendant CIFG Assurance North America, Inc. (the "Individual Defendants"). Compl. ¶ 27, 64; Wood Decl. ¶ 9.  MBIA subsequently submitted a number of related lawsuits, which were subsequently consolidated and coordinated with the Initial Bond Cases under the caption <u>Ambac Bond Insurance Coverage Case</u>  (collectively, the "Bond Cases"). Compl. ¶ 27, 64.

According to the plaintiffs in the Bond Cases, MBIA and other bond insurers made misrepresentations and created false financial conditions that caused the plaintiffs to purchase municipal bond insurance and then defaulted on those insurance contracts after they lost their AAA financial rating as a result of MBIA's exposure to risky subprime-related investments. <u>See</u> Compl. ¶¶ 28-30.  The Bond Cases generally allege that MBIA and the other defendants engaged in two types of wrongdoing: (i) manipulated the price of bond insurance by conspiring to perpetuate an anticompetitive "dual credit rating" system that unfairly assigned public entities lower ratings than corporate entities with equivalent risks of default, and as a result, artificially inflated the cost of bond insurance that the plaintiffs purchased; and (ii) misrepresented and concealed their financial strength on which plaintiffs relied in choosing to purchase bond insurance and deciding to leave bond insurance in place. <u>Id</u>.

The following causes of action remain pending against the Bond Insurer Defendants: (i) fraud and deceit; (ii) breach of contract; and (iii) unfair business practices. Compl. ¶¶ 31, 32.  In addition, a cause of action for fraud and deceit remains pending against the Individual Defendants. <u>See</u> Compl. ¶¶ 31, 32.   The plaintiffs generally seek: (i) declaratory relief; (ii)

unspecified damages, including treble damages; (iii) injunctive relief; (iv) fees and costs; and (v) punitive and exemplary damages. <u>See</u> Compl. ¶ 33.

By email dated March 29, 2010, MBIA provided notice of a complaint styled <u>City of Phoenix v. Ambac Financial Group, Inc., et al.</u>, filed on March 11, 2010 in Arizona federal court against Ambac Financial Group, Inc. ("Ambac"), MBIA, and Financial Guaranty Insurance Company (the "City of Phoenix Action"). Compl. ¶ 34; Wood Decl. ¶ 10. The complaint generally alleges that the defendants unfairly discriminated against the City of Phoenix in violation of Arizona law by charging grossly excessive bond insurance premiums. <u>See</u> Compl. ¶ 34. According to the plaintiffs, the dual rating system employed by the defendants arbitrarily and unfairly discriminates against municipalities as compared to corporate bond issuers, and through the allegedly discriminatory system, municipalities have allegedly been forced to pay enormous amounts in bond insurance premiums to receive the same credit rating on their bonds as private sector bond issuers with equivalent or greater default risks. <u>Id</u>. The complaint asserts causes of action for unfair discrimination and unjust enrichment. <u>Id</u>. The plaintiff seeks general, special, consequential, and incidental damages and interest. <u>Id</u>.

Most of the Bond Cases remain pending in California state court. MBIA seeks coverage for the Bond Cases as a single Claim under the 07-08 Policies.

### 3.    **The Derivatives Cases**

On August 18, 2008, MBIA provided notice under the 07-08 Policies of two lawsuits styled <u>City of Los Angeles v. Bank of America, N.A., et al.</u> and <u>City of Stockton v. Bank of America, N.A., et al.</u> filed on July 23, 2008 in California state court (the "Initial Derivatives Cases"). Compl. ¶¶ 35, 64; Wood Decl. ¶ 12. MBIA subsequently provided notice of several related lawsuits, which along with the Initial Derivatives Cases, were ultimately transferred to

the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings under the caption In Re Municipal Derivatives Antitrust Litigation (the "Derivatives Cases"). Compl. ¶¶ 35, 64.

The amended complaints allege that the defendants engaged in an "illegal conspiracy" to manipulate the market for municipal derivatives by: (i) engaging in conduct to maintain or stabilize the price of municipal derivatives; (ii) allocating customers and markets for municipal derivatives; (iii) rigging the bidding process by which municipal bond issuers acquired municipal derivatives; and (iv) conspiring to manipulate the terms that issuers received on municipal derivatives. See Compl. ¶ 36.  Further, the defendants allegedly restrained trade or commerce in violation of federal law by allocating the market for municipal derivatives amongst themselves, sharing their illegal gains through kick-backs to one another, and making other secret, undisclosed arrangements. Id.

The amended complaints assert causes of action for violations of the California Cartwright Act and § 1 of the Sherman Act. See Compl. ¶ 38.  The plaintiffs seek the following relief: (i) a declaration that the defendants' conduct is illegal and unlawful and a per se violation of § 1 of the Sherman Act; (ii) a judgment that the defendants are jointly and severally liable for treble damages; (iii) injunctive relief as to each individual defendant; (iv) fees and costs; and (v) pre- and post-judgment interest. See Compl. ¶ 39.

The Derivatives Cases remain pending in the consolidated proceeding entitled In re Municipal Derivatives Antitrust Litigation in the United States District Court for the Southern District of New York. Compl. ¶¶ 41, 69.  MBIA seeks coverage for the Derivative Cases as a single Claim under the 07-08 Policies.

## ARGUMENT

### I.

### THE COMPLAINT FAILS TO STATE A CLAIM
### AND MUST BE DISMISSED UNDER FRCP 12(b)(6)

A complaint must be dismissed under Rule 12(b)(6) if it does not plead facts sufficient "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must consider the allegations of the complaint, documents attached to the complaint and any documents attached to the motion to dismiss that are referenced by the complaint. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Here, the Policies and the underlying actions are referenced in the Complaint and thus may be properly considered by the Court in support of Underwriters' motion to dismiss. The Policies are attached as exhibits to the Wood Declaration submitted in support of this motion.

As there has not been a final disposition of the Claims and under the express terms of the Policies Underwriters have no obligation to reimburse MBIA prior to final disposition, MBIA cannot demonstrate that it is entitled to coverage and the Complaint fails to state a claim for relief that is plausible on its face. Therefore, the Complaint must be dismissed.

**A.**    **There is No Duty to Defend or Advance and Underwriters Have No Obligation to Reimburse Any Loss Until Final Disposition**

The Policies provide that coverage is governed by New York law.[5]  New York courts construe insurance policies in a manner that "affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." Consol. Edison Co. v. Allstate Ins. Co., 98 N.Y.2d 208, 221-22 (2002), quoting Hooper Assoc. v. AGS Computers, 74 N.Y.2d 487, 493 (1989).  Policy provisions must be given their plain and ordinary meaning. Cali v. Merrimack Mut. Fire Ins. Co., 841 N.Y.S.2d 128, 129 (2d Dep't 2007); Zahler v. Twin City Fire Ins. Co., No. 04-cv-10299-LAP, 2006 WL 846352, at *4 (S.D.N.Y. Mar. 31, 2006).  The New York Court of Appeals has admonished that courts should "not disregard clear provisions which the insurers inserted in the policies and the insured accepted, and equitable considerations will not allow an extension of coverage beyond its fair intent and meaning." Raymond Corp. v. Nat'l Union Fire Ins. Co., 5 N.Y.3d 157, 162 (2005); Caporino v. Travelers Ins. Co., 62 N.Y.2d 234, 239 (1984).  Thus, policies may not be read to render some provisions meaningless. Cnty. of Columbia v. Cont'l Ins. Co., 83 N.Y.2d 618, 628 (1994).

The Policies are indemnity insurance policies that do not provide for a duty to defend or advance defense costs and expressly state that Underwriters have no obligation to pay any Loss until final disposition of a Claim.  The Declarations and Section V., Settlements and Defense, of the Policies specify that Underwriters do not have a duty to defend.  Consistent with the nature of the indemnity coverage provided by the Policies, Section IV.F. of the Policies expressly provides that Underwriters shall reimburse Costs, Charges and Expenses and other Loss "only upon the final disposition of any **Claim**; provided, however, that Underwriters at their sole discretion

---

[5] See Wood Decl., Ex. 1, at PI Coverage, pp. 28 of 29; Ex. 3, at PI Coverage, pp. 23 of 24.

agree to advance **Costs, Charges and Expenses** every 90 days." Wood Decl., Ex. 1 & 3, at PI Coverage § IV.F. (emphasis added).   Pursuant to a plain reading of these provisions, Underwriters are not obligated to advance or reimburse Costs, Charges and Expenses or any other Loss until the final disposition of a Claim.   While Underwriters may agree to advance Costs, Charges and Expenses every 90 days, it is in "their sole discretion" to do so. See ERC Indus., Inc. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.), 136 B.R. 59, 63-64 (S.D.N.Y. 1992) (collecting cases and finding that policy providing that insurer "may at its option and upon request, advance on behalf of [the insureds] expenses which they have incurred in connection with claims made against them, prior to disposition of such claims…" did not create an immediate duty to defend, and while the policy provided the insurer with the discretion to advance defense expenses, it did not require it).

        In the absence of specific language imposing a duty to defend or advance defense costs, New York law will not imply a duty to defend and advance defense costs.   Id.  Where, as here, the policy does not provide for a duty to defend or advance, coverage is determined pursuant to the narrow duty to indemnify and coverage is only available for defense costs if indemnification is required for the underlying claims. See Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1219 (2d Cir. 1995) (finding that non-duty-to-defend policies did not "contemplate unconditional payment of defense costs for potentially covered claims, but only payment of costs if indemnification is required").[6]   The duty to indemnify is determined by the actual basis for the insured's liability, rather than the potential for coverage measured against the underlying

---

[6] See also In re Kenai Corp., 136 B.R. at 64 ("[u]nlike duty to defend policies, which require the insurer to defend claims even if they are only arguably entitled to coverage, policies requiring the insurer to reimburse damages and defense costs related to wrongful acts entitle the insured to costs only when the underlying claims are covered by the policy"); Health-Chem Corp. v. Nat'l Union Fire Ins. Co., 559 N.Y.S.2d 435, 437-38 (N.Y. Sup. Ct. 1990) (finding that allocation of defense costs between covered and non-covered defendants was appropriate).

allegations as with respect to an insurer's duty to defend or advance defense costs. <u>Servidone</u> <u>Const. Corp. v. Sec. Ins. Co.</u>, 64 N.Y.2d 419, 424, 425 (1985).[7]

The Policies do not provide for a duty to defend or advance costs, and expressly state that Underwriters shall reimburse Loss only upon the final disposition of a Claim and it is in their "sole discretion" whether to advance Costs, Charges and Expenses prior to the final disposition of a Claim.   Therefore, until there is a final disposition of a Claim, Underwriters have no obligation under the Policies to reimburse MBIA for any Loss.

**B.      There Has Not Been a Final Disposition of a Claim**

There has not been a final disposition of the Transformation Claims, the Bond Claims or the Derivatives Claims, and Underwriters therefore are not obligated to reimburse MBIA for Costs, Charges and Expenses or any other Loss incurred to date.

Despite the clear terms of the Policies, MBIA contends that Underwriters are obligated to advance costs every 90 days after such costs have been incurred and no later than at the time "each individual Claim has been finally resolved." Compl. ¶ 67-68.   According to MBIA, as some of the underlying actions it included within each Claim have reached final disposition, Underwriters must reimburse it for costs and settlements incurred in those actions.   This interpretation is directly contrary to the explicit terms of the Policies and attempts to create an obligation to advance or defend where none exists.

Section IV of the Policies specifies that Underwriters shall reimburse Loss only upon the final disposition of a Claim (Paragraph F of Section IV), <u>and</u> that "more than one **Claim**

---

[7] <u>See also</u> <u>George Muhlstock & Co. v. Am. Home Assurance Co.</u>, 502 N.Y.S.2d 174, 179 (1st Dep't 1986) ("[w]ith respect to the obligation to pay, liability depends upon the basis for liability adjudicated against the insured in the main action").   Even under the broader standard applied to determine coverage for defense costs under policies providing for a duty to defend or advance defense costs, there is no obligation to defend or advance where there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify the insured. <u>See</u> <u>Erdman v. Eagle Ins. Co.</u>, 658 N.Y.S.2d 463, 466 (3d Dep't 1997).

involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim**…" (Paragraph C of Section IV).  Wood Decl., Ex. 1 & 3, at PI Coverage § IV. "Interrelated Wrongful Acts" is defined in the Policies to mean "**Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions."  Wood Decl., Ex. 1 & 3, at PI Coverage § II.H. See Seneca Ins. Co. v. Kemper Ins. Co., No. 02-cv-10088-PKL, 2004 WL 1145830, at *9 (S.D.N.Y. May 21, 2004) (treating interrelated wrongful acts as a single claim under insurance policy because they shared a sufficient factual nexus), aff'd, 133 F. App'x 770 (2d Cir. 2005). Thus, Underwriters are not obligated to reimburse MBIA for any Loss until there has been a final disposition of all Claims involving the same Wrongful Acts or Interrelated Wrongful Acts and therefore deemed a single Claim.

MBIA contends that all of the Transformation Cases constitute a single Claim under the 08-09 Policies, and all of the Bond Cases and all of the Derivatives Cases constitute two single Claims under the 07-08 Policies.[8]  MBIA suddenly changes tack, however, with respect to the Policies' express terms providing that "Underwriters shall reimburse **Loss** only upon the final disposition of any **Claim**."  In that regard, MBIA seeks to treat the underlying actions alleging the same Wrongful Acts or Interrelated Wrongful Acts as separate Claims in order to create a duty to defend or advance where none exists, and require Underwriters to reimburse Loss as each underlying action deemed part of a single Claim is resolved.  This argument contradicts the Policies' express terms and MBIA's own previous interpretation of the coverage, and such a

---

[8] Of course, MBIA interprets the coverage in this way where it is to MBIA's benefit because only a single $1 million retention would apply to each Claim and not to each individual lawsuit. Indeed, if each lawsuit was treated as a separate Claim, Plaintiff's retention obligations could be $19 million or more for the Bond Cases and Derivatives Cases.

strained and implausible reading of clear policy language should not be applied to find coverage where none exists.

The Complaint acknowledges that certain of the Transformation Cases, certain of the Bond Cases and certain of the Derivative Cases remain pending.   Therefore, there has not been a final disposition of a Claim and Underwriters are not obligated to reimburse Plaintiff for defense costs or any other Loss.   There is no requirement in the Policies that Underwriters reimburse Plaintiff for any Loss or otherwise advance Costs, Charges and Expenses before there has been a final disposition a Claim.   Rather, the Policies explicitly provide that Underwriters shall reimburse costs and other Loss only upon the final disposition of a Claim, although Underwriters in their "sole discretion" may agree to advance defense costs at an earlier date.   Therefore, pursuant to the plain and ordinary meaning of the terms of the Policies, Underwriters have no obligation to indemnify MBIA.

Any obligation that Underwriters may have to reimburse the Plaintiff can only be determined after the final disposition of a Claim based on actual coverage for the underlying actions, rather than potentially covered allegations of the complaints.   Coverage cannot be determined at this time because there has not been a final disposition of a Claim, and additional information may become available after the final disposition of the Claims that impacts coverage.   For example, the Policies contain certain exclusions that apply upon a final adjudication of the excluded conduct, including dishonest or fraudulent acts or obtaining improper profit or advantage, that may be triggered upon the final disposition of the Claims. Underwriters would also be entitled to allocate between payments incurred with respect to covered and uncovered claims. See Pfizer, Inc. v. Stryker Corp., 385 F. Supp. 2d 380, 386 (S.D.N.Y. 2005).  If Underwriters were required to advance costs, they would be required to seek

recoupment of uncovered costs after the final disposition of the Claims and to relitigate coverage issues that Plaintiff seeks to prematurely place before this Court.

Underwriters have no current obligation to reimburse Plaintiff for any Loss and a determination of coverage under the Policies for the Transformation Cases, Bond Cases and Derivative Cases would be premature because there has not been a final disposition of those Claims.[9]  Therefore, the Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6).

## II.

### THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FRCP 12(b)(1)

A complaint must be dismissed under Rule 12(b)(1) where the Court does not have subject matter jurisdiction.  Courts have subject matter jurisdiction only over cases that are ripe for adjudication, which is jurisdictional in nature and properly considered on a motion to dismiss under FRCP 12(b)(1).  Sirob Imports, Inc. v. Peerless Ins. Co., 958 F. Supp. 2d 384, 388 (E.D.N.Y. 2013), aff'd, No. 13-cv-3144, 2014 WL 868067 (2d Cir. Mar. 6, 2014).  "In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but it is not required to draw all reasonable inferences in the plaintiff's favor." Id. at 388 citing J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).

_____

[9] Upon the final disposition of the Claims, a number of significant coverage defenses will likely apply to preclude entirely or limit MBIA's requests for reimbursement, including: (i) whether the Claim is for Wrongful Acts in the performance of Professional Services, rather than liability arising from a business transaction to advance its own interests or activities not allowed under the law and regulations governing services provided by the Assureds; (ii) whether the payments are Loss insurable under New York law, including payments for unjust enrichment, punitive damages, contractual liability and liability for intentional conduct; and (iii) the applicability of a number of exclusions, including regarding financial guarantees, security holder claims, dishonest or fraudulent acts, improper personal profit or advantage, deliberate breach of law or regulation, purchase or sale of MBIA's shares, claims by government agencies, and reimbursement of fees, commissions, costs or other charges.

In resolving a jurisdictional dispute, the Court must look at the substance of the allegations, including review of the pleadings and any evidence before it. <u>Cargill Int'l S.A. v. M/T Pavel Dybenko</u>, 991 F.2d 1012, 1019 (2d Cir. 1993).  Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." <u>Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000).

Where a clear and unambiguous contractual condition precedent remains outstanding, an insured's claim against its insurer is not ripe for adjudication.  <u>Sirob Imports, Inc.</u>, 958 F. Supp. 2d at 388.[10]  In such circumstances, it would be merely advisory for a court to render a decision as to whether the insurer breached any obligation. <u>Id.</u> at 389-90.  Further, the party seeking declaratory judgment bears the burden of proving that its case is ripe for adjudication. <u>See</u> <u>E.R. Squibb & Sons, Inc. v. Lloyd's & Companies</u>, 241 F.3d 154, 177 (2d Cir. 2001), <u>citing</u> <u>Cardinal Chem. Co. v. Morton Int'l, Inc.</u>, 508 U.S. 83, 95, 113 S.Ct. 1967, 1974 (1993).

The Policies require that as a condition precedent to any action against Underwriters, MBIA shall have fully complied with all of the terms of the Policies and the amount of its obligation to pay shall have been fully and finally determined. Wood Decl., Ex. 1 & 3, at PI Coverage § X.  The Policies also provide that Underwriters have no obligation to reimburse MBIA for any Loss until final disposition of the Claim.  As discussed above, there has not been a final disposition of a Claim and Underwriters have no obligation to reimburse MBIA for any Loss.  MBIA has not complied with all of the terms of the Policies and MBIA's obligation to pay has not been fully and finally determined.  As contingencies necessary for coverage have not yet

---

[10] <u>See</u> <u>Ocean Gardens Nursing Facility, Inc. v. Travelers Companies, Inc.</u>, 936 N.Y.S.2d 323, 324 (2d Dep't 2012) (finding that insured's duty to pay is determined by actual basis for insured's liability to a third person, and therefore, as insured's liability to plaintiff in underlying action had not yet been determined, it was premature to grant insured's request for a declaration that insurer was required to indemnify it).

occurred, the Complaint must be dismissed. King's Gym Complex, Inc. v. Philadelphia Indem. Ins. Co., 314 F. App'x 342, 344 (2d Cir. 2008) (affirming dismissal where insured was required under policy to first pay for its actual loss); see also Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 261 F. Supp. 2d 293, 295 (S.D.N.Y. 2003) (dismissing claims as not ripe because insured failed to file proof of loss as required by the policy).

The Complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiff's claim for coverage under the Policies and its action against Underwriters are not ripe for adjudication.

## CONCLUSION

For the foregoing reasons, Underwriters respectfully request that the Court dismiss Plaintiff's Complaint in its entirety because (1) Plaintiff has failed to plead a claim upon which relief may be granted and (2) the Court lacks subject matter jurisdiction as the claim for coverage under the Policies and the action against Underwriters is not ripe for adjudication.

Dated: April 25, 2014
New York, New York

Respectfully submitted,

  /s/ Edward J. Kirk
Edward J. Kirk
Theresa M. Biedermann
Bryce K. Guingrich
CLYDE & CO US LLP
405 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: 212-710-3900
Fax: 212-790-3950
edward.kirk@clydeco.us
theresa.biedermann@clydeco.us
bryce.guingrich@clydeco.us

*Counsel for Defendants*
CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, LEXINGTON
INSURANCE COMPANY and
WURTTEMBERGISCHE
VERSICHERUNG AG

VIA ECF TO:

Robin L. Cohen
Kenneth H. Frenchman
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Phone: 212-506-1700
rcohen@kasowitz.com
kfrenchman@kasowitz.com

*Counsel for Plaintiff*
MBIA INC.