KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
Robin L. Cohen (rcohen@kasowitz.com)
Kenneth H. Frenchman (kfrenchman@kasowitz.com)
1633 Broadway
New York, NY 10019
212-506-1700
*Attorneys for Plaintiff MBIA Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MBIA INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CERTAIN UNDERWRITERS AT LLOYD'S, | ) |
| LONDON, LEXINGTON INSURANCE | ) |
| COMPANY and WURTTEMBERGISCHE | ) |
| VERSICHERUNG AG, | ) |
| | ) |
| Defendants. | ) |

**No. 14 Civ. 1769 (SAS) (GWG)**

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**AND CROSS-MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

SUPPLEMENTAL STATEMENT OF FACTS ........................................................4

ARGUMENT .........................................................................................................7

I.     MBIA IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON ITS FIFTH
       CAUSE OF ACTION REQUIRING THE CROSS-MOTION DEFENDANTS TO
       PAY THE COSTS OF DEFENDING THE TRANSFORMATION CLAIMS ................7

       A.     Underwriters Must Pay MBIA's Costs Of Defending Against Allegations Of
              Potentially Covered Claims ....................................................................9

              1.     The Plain Policy Language Provides That Underwriters Must Pay
                     Amounts MBIA Incurs In Defending Against Allegations Of Liability .....9

              2.     The Policy Language Cited By Underwriters Does Not Negate The
                     Policies' Express Imposition Of A Duty To Pay For The Costs Of
                     Defense With Respect To Potentially Covered Claims ...........................11

              3.     The Cases Cited By Underwriters Actually Support MBIA, As They
                     Show That Underwriters Could Have, But Did Not, Include Language
                     In The Policies Necessary To Their Proffered Interpretation ..................16

       B.     The Transformation Claims Constitute Potentially Covered Claims ..................17

              1.     The Transformation Claims Allege Wrongful Acts In The Performance
                     Of A Professional Service .......................................................................17

              2.     Underwriters Cannot Establish That The Transformation Claims Fall
                     Solely And Exclusively Within Any Policy Exclusion ............................19

II.    BECAUSE MBIA'S CLAIMS ARE RIPE FOR RESOLUTION, THE MOTION TO
       DISMISS MUST BE DENIED.......................................................................21

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABN Amro Bank N.V. v. Dinallo,*
    962 N.Y.S.2d 854 (N.Y. Sup. Ct. 2013) ....................................................... *passim*

*Albert J. Schiff Assocs. v. Flack,*
    435 N.Y.S.2d 972 (N.Y. 1980) ....................................................................... 18

*Am. Commercial Lines LLC v. Water Quality Ins. Syndicate,*
    No. 09 Civ. 7957 (LAK), 2010 WL 1379763 (S.D.N.Y. Mar. 29, 2010) ........... 8, 9

*Aspen Ins. UK, Ltd. v. Fiserv, Inc.,*
    No. 09 Civ. 02770 (CMA) (CBS), 2010 WL 5129529 (D. Colo. Dec. 9, 2010) ........ 14

*Associated Indem. Corp. v. Fairchild Indus., Inc.,*
    961 F.2d 32 (2d Cir. 1992) ............................................................................ 24

*Bodewes v. Ulico Cas. Co.,*
    336 F. Supp. 2d 263 (W.D.N.Y. 2004),
    *aff'd in relevant part* 165 F. App'x 125 (2d Cir. 2006) .................................... 11, 19

*Burke v. Ulico Cas. Co.,*
    165 F. App'x 125 (2d Cir. 2006) ..................................................................... 12, 23

*Cont'l Cas. Co. v. JBS Constr. Mgmt., Inc.,*
    No. 09 Civ. 6697 (JSR), 2010 WL 2834898 (S.D.N.Y. July 1, 2010) ............... 18

*David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co.,*
    934 F. Supp. 2d 533 (E.D.N.Y. 2013),
    *aff'd* 542 F. App'x 89 (2d Cir. 2013) ................................................................ 18

*Dingle v. City of New York,*
    728 F. Supp. 2d 332 (S.D.N.Y. 2010) .............................................................. 8

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,*
    411 F.3d 384 (2d Cir. 2005) ........................................................................... 24

*ERC Indus., Inc. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.),*
    136 B.R. 59 (S.D.N.Y 1992) ........................................................................... 16, 17

*Erdman v. Eagle Ins. Co.,*
    502 N.Y.S.2d 174 (1st Dep't 1986) ................................................................. 16

*Fed. Ins. Co. v. Kozlowski,*
    792 N.Y.S.2d 397 (1st Dept. 2005) ................................................................. 10, 12, 14

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
   No. 600507/03, 2004 WL 583829 (N.Y. Sup. Ct. Mar. 5, 2004) ...........................................12

*George Muhlstock & Co. v. Am. Home Assur. Co.*,
   502 N.Y.S.2d 174 (1st Dep't 1986) .........................................................................................16

*Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*,
   958 F. Supp. 2d 507 (S.D.N.Y. 2013).......................................................................................24

*Health-Chem Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   559 N.Y.S.2d 435 (N.Y. Sup. Ct. 1990) ...................................................................................16

*King's Gym Complex, Inc. v. Phila. Indem. Ins. Co.*,
   314 F. App'x 342 (2d Cir. 2008) .........................................................................................24, 25

*Lowy v. Travelers Prop. & Cas. Co.*,
   No. 99 Civ. 2727 (MBM), 2000 WL 526702 (S.D.N.Y. May 2, 2000) ...........................10, 12

*Luria Bros. & Co. v. Alliance Assurance Co.*,
   780 F.2d 1082 (2d Cir. 1986)...................................................................................................13

*McGinniss v. Emp'rs. Reinsurance Corp.*,
   648 F. Supp. 1263 (S.D.N.Y. 1986)..........................................................................................12

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Grp., Inc. (In re Ambassador Grp., Inc. Litig.)*,
   738 F. Supp. 57 (S.D.N.Y. 1990) ........................................................................................16, 17

*Nu-Way Envtl., Inc. v. Planet Ins. Co.*,
   No. 95 Civ. 573 (HB), 1997 WL 462010 (S.D.N.Y. Aug. 12, 1997) ................................15, 17

*Ocean Gardens Nursing Facility, Inc. v. Travelers Cos.*,
   936 N.Y.S.2d 323 (2d Dep't 2012)............................................................................................24

*PepsiCo, Inc. v. Cont'l Cas. Co.*,
   640 F. Supp. 656 (S.D.N.Y. 1986) ......................................................................................10, 11

*Perez v. Int'l Bhd. of Teamsters, AFL-CIO*,
   No. 00 Civ. 1983 (LAP) (JCF), 2002 WL 31027580 (S.D.N.Y. Sept. 11, 2002).....................8

*Pfizer, Inc. v. Stryker Corp.*,
   385 F. Supp. 2d 380 (S.D.N.Y. 2005).......................................................................................16

*Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   969 N.Y.S.2d 808 (N.Y. 2013) .................................................................................................15

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000).........................................................................................................8

*Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*,
    488 N.Y.S.2d 139 (N.Y. 1985) ...................................................................16

*Sirob Imports, Inc. v. Peerless Ins. Co.*,
    958 F. Supp.2d 384 (E.D.N.Y. 2013) .................................................24, 25

*Societe Generale v. Certain Underwriters at Lloyd's, London*,
    767 N.Y.S.2d 416 (1st Dep't 2003) ...........................................................18

*Staehr v. Harford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008) .........................................................................8

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*,
    73 F.3d 1178 (2d Cir. 1995) ........................................................13, 16, 17

*Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    No. 2012EF63, 2013 WL 3357812 (N.Y. Sup. Ct. Mar. 7, 2013),
    *aff'd* 976 N.Y.S.2d 921 (1st Dep't 2013)...............................11, 12, 14

*Tagged, Inc. v. Scottsdale Ins. Co.*,
    No. JFM–11–127, 2011 WL 2748682 (S.D.N.Y. May 27, 2011) ...........18

*Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*,
    357 N.Y.S.2d 705 (N.Y. 1974) ...................................................................15

*Touchette Corp. v. Merchants Mut. Ins. Co.*,
    429 N.Y.S.2d 952 (4th Dep't 1980)...........................................................19

*Truax v. State Farm Insurance Cos.*,
    422 N.Y.S.2d 592 (N.Y. Sup. Ct. 1979) ...................................................25

*Uniroyal, Inc. v. Home Ins. Co.*,
    707 F. Supp. 1368 (E.D.N.Y. 1988) ..........................................................13

*U.S. Underwriters Ins. Co. v. LCRF Enters., LLC*,
    No. 10 Civ. 3418 (GBD), 2012 WL 993502 (S.D.N.Y. Mar. 26, 2012) ...............................24

*Westport Ins. Corp. v. Hamilton Wharton Grp., Inc.*,
    No. 10 Civ. 2188 (RMB)(THK), 2011 WL 724737 (S.D.N.Y. Feb. 23, 2011),
    *aff'd*, 483 F. App'x 599 (2d Cir. 2012)...................................................18

*Woods v. Gen. Acc. Ins.*,
    738 N.Y.S.2d 791 (4th Dep't 2002)...........................................................15

*In re WorldCom, Inc. Sec. Litig.*,
    354 F. Supp. 2d 455 (S.D.N.Y. 2005).................................................12, 15

**Statutes**

28 U.S.C. § 2201 (2014) .................................................................................................24

N.Y. Debt. & Cred. Law § 273 (2014) ...........................................................................4

N.Y. Debt. & Cred. Law § 274 (2014) ...........................................................................4

**Other Authorities**

A. Windt, *Insurance Claims & Disputes*, § 6.20 (3d ed. 1995) ....................................15

Fed. R. Civ. P. 12(b)(1)...................................................................................................8

Fed. R. Civ. P. 12(b)(6)...................................................................................................8

Fed. R. Civ. P. 12(c) .......................................................................................................8

Fed. R. Civ. P. 56(c)(4)..................................................................................................23

Plaintiff MBIA Inc. ("MBIA") submits this memorandum of law (1) in opposition to the motion to dismiss of Defendants Certain Underwriters at Lloyd's, London, Lexington Insurance Company, and Wurttembergische Versicherung AG (collectively, "Underwriters"); and (2) in support of MBIA's cross-motion for judgment on the pleadings with respect to its Fifth Cause of Action seeking a declaration that Defendants Certain Underwriters at Lloyd's, London and Lexington Insurance Company (the "Cross-Motion Defendants")[1] are obligated to pay for MBIA's costs of defending against the underlying Transformation Claims.[2]

## PRELIMINARY STATEMENT

In the last six years, MBIA has spent millions in the defense of claims that alleged various wrongful acts by MBIA in the course of providing professional insurance services. With respect to the underlying Transformation Claims in particular, that defense has succeeded; MBIA prevailed in the only Transformation Claim to proceed to judgment, and all other such Claims have been settled and/or dismissed, culminating on May 2, 2014 in the dismissal with prejudice of the last pending claim that is related to the Transformation Claims, the CQS Claim. With the resolution of that final Transformation Claim, there are only two questions remaining with respect to MBIA's right to recover the costs it incurred in defending those claims: what are the standards for Underwriters' duty to reimburse MBIA for the expenses it incurred in defending the Transformation Claims, and do the Transformation Claims meet those standards.

With respect to the first of those questions, Underwriters now claim that "coverage is only available for defense costs if indemnification is required for the underlying claims" (Defs. Br. at 14), and that therefore MBIA's right to defense costs is based on the "actual facts," rather

---

[1] The Policies issued by the remaining Defendant, Wurttembergische Versicherung AG, do not cover the policy period applicable to the Transformation Claims, and thus are not implicated by MBIA's Fifth Cause of Action.

[2] All capitalized terms not otherwise defined herein have the same meaning as set forth in MBIA's Complaint in this action ("Complaint" or "Compl.").

than whether MBIA's acts as alleged in the underlying claims were "Wrongful Acts" within the scope of the Policies, and on whether MBIA incurred "actual liability" rather than the potential liability it faced.  At best, under Underwriters' interpretation, MBIA would be required to relitigate and prove the very fact that it spent millions in defense costs disproving – that it committed one or more of the Wrongful Acts alleged in the Transformation Claims.  At worst, paradoxically, Underwriters' interpretation means that MBIA would only be entitled to its defense costs if it actually lost the Transformation Claims, but has no right to payment of its defense costs because it successfully defended against the allegations.

Nothing in the language of the Policies supports either strained conclusion.  To the contrary, the Policies specifically provide that Underwriters will pay on behalf of MBIA the legal fees and expenses "incurred" in defense of "any judicial, administrative proceeding . . . initiated against [MBIA] in which *they may be subjected to* a binding adjudication of liability," including those which arise from an *"allegation"* of wrongful conduct.  The Policies are thus in full accord with black-letter New York law holding that an insurer who has agreed to pay the costs of its policyholder's defense must pay those costs with respect to any claim that, if proved, would potentially fall within the coverage of the policy.  None of the policy provisions or inapposite authorities on which Underwriters rely is sufficient to negate the Policies' express promise to pay the costs of defending against alleged errors that "may" – not "do" – result in the imposition of liability on MBIA.

Nor, applying those standards, can there be any legitimate dispute that the Transformation Claims triggered Underwriters' duty to pay for the costs of MBIA's defense.  Those claims specifically sought to hold MBIA liable for alleged wrongful acts dealing directly with MBIA's provision of professional insurance services – as evidenced by the fact that the very transactions at issue in those claims were subject to review, and approved by, the New York

2

State Insurance Department ("NYID").  MBIA thus is entitled to judgment on the pleadings with respect to its Fifth Cause of Action, which seeks a declaration of its right to coverage for the defense of the Transformation Claims.  Indeed, that judgment will likely resolve this dispute with respect to the Transformation Claims, and the 08-09 Policies as a whole, because the amounts MBIA spent in defense of those Claims far exceed the policy limits available for the Transformation Claims.

The resolution of the CQS Claim also requires the rejection of Underwriters' argument – made after disputing coverage for years, and despite the fact that MBIA has spent millions in covered defense costs from its own pocket – that this coverage action is not "ripe" and must therefore be dismissed.  Underwriters base that argument on the assertion that the language of the Policies does not require them to pay the costs of defense in connection with *any* underlying claim until not only that claim, but *all related claims* have been finally resolved.  Now that the CQS Claim has been resolved, whatever merit Underwriters' motion to dismiss may have had while the CQS Claim was pending (and it had none), that argument now is moot, as all of the Transformation Claims have been resolved.[3]

In any event, even before the CQS Claim was resolved, the motion to dismiss was without merit.  Contrary to Underwriters' contention, the policy language does not permit them to withhold payment of defense costs until the resolution of a given underlying claim, much less resolution of all "related" claims.  Further, MBIA's claims for declaratory relief are properly before the Court whether or not Underwriters' defense payment obligation is currently triggered.  Accordingly, the motion to dismiss should be denied.

---

[3] In light of the significance of the dismissal of the CQS Claim to Underwriters' motion to dismiss, on May 2, 2014, counsel for MBIA wrote to Underwriters' counsel informing him of the dismissal of the CQS Claim, and asking that Underwriters accordingly withdraw their motion to dismiss.  Declaration of Robin L. Cohen dated May 9, 2014 ("Cohen Dec."), Ex. A.  By response letter dated May 6, 2014, Underwriters refused that request.  Cohen Dec., Ex. B.

## SUPPLEMENTAL STATEMENT OF FACTS[4]

Because both Underwriters' motion and this cross-motion are directed to the pleadings and, more importantly, as set forth herein, Underwriters' duty to pay the defense costs sought in the cross-motion is triggered by the allegations of the Transformation Claims' complaints, the facts at issue are undisputed.  Despite that, Underwriters inaccurately depict the facts relating to the Transformation Claims in several key respects.

First, Underwriters present an improperly truncated description of the causes of action and allegations at issue in the Transformation Claims, asserting that they were based on the plaintiff banks' (the "Banks") allegations that MBIA engaged in the Transformation to benefit MBIA, knowing that the Transformation would harm the Banks.  As an initial matter, that assertion ignores that the Transformation Claim *ABN Amro Bank N.V. et al. v. Dinallo, et al.* (the "Article 78 Proceeding") focused on whether the NYID's approval of the Transformation was arbitrary and capricious, or contrary to law, and did not require a showing of fraudulent conduct by MBIA.[5]  Underwriters thus ignore that the Transformation Claims expressly asserted claims and allegations that would not require proof of intentional conduct by MBIA that would harm the Banks, including claims under New York Debtor and Creditor Law §§ 273 and 274,[6] for breach of contract and breach of the duty of good faith and fair dealing,[7] and that the Banks sought various forms of declaratory relief.[8]

---

[4] In order to avoid unnecessary duplication, MBIA limits its Supplemental Statement of Facts to those matters (1) relevant to its opposition to the motion to dismiss or its cross-motion for judgment on the pleadings; and (2) that are not set forth, or are set forth inaccurately, in the Defendants' Memorandum of Law In Support of Their Motion to Dismiss ("Defs. Br.").

[5] *See* Request for Judicial Notice, Ex. A ("Article 78 Petition"), ¶¶ 106-110, 116-136.

[6] Request for Judicial Notice, Ex. B ("Plenary Complaint"), ¶¶ 83-98; Request for Judicial Notice, Ex. C ("Aurelius Complaint"), ¶¶ 76-80; Request for Judicial Notice, Ex. D (CQS Complaint), ¶¶ 62-77.

[7] Plenary Complaint, ¶¶ 112-121; Aurelius Complaint, ¶¶ 81-85; CQS Complaint, ¶¶ 91-100.

[8] Plenary Complaint, ¶¶ 122-130 (for a declaration of joint and several liability under the Banks' insurance policies); Aurelius Complaint, Prayer for Relief; CQS Complaint, Prayer for Relief.

Further, the Transformation itself was approved by the NYID, which expressly held that, after the Transformation, MBIA "retain[ed] sufficient surplus to support its obligations." *ABN Amro Bank N.V. v. Dinallo*, 962 N.Y.S.2d 854, 863 (N.Y. Sup. Ct. 2013). According to the NYID Superintendent, the Transformation would aid the municipal bond market by allowing municipalities unable to borrow to purchase bond insurance to get access to credit and potentially increasing the value of municipal bonds insured by MBIA. *Id.* at 864.

In addition, Underwriters do not inform the Court of the undisputed resolution of the Transformation Claims – and particularly that MBIA prevailed in defense of those Claims. Specifically, on March 4, 2013, after a five-week hearing in the Article 78 Proceeding, the New York Supreme Court upheld the NYID's approval of the Transformation. In so doing, it held that the NYID's approval of the Transformation was neither arbitrary nor capricious nor contrary to law. *ABN Amro Bank N.V.*, 962 N.Y.S.2d at 862-64. All other Transformation Claims have been settled and/or dismissed. Compl., ¶ 55; *see also* Request for Judicial Notice, Exs. E-I.

Underwriters' brief also fails to address the facts clearly establishing that the Transformation Claims allege errors or omissions in MBIA's "rendering or failing to render Professional Services," defined under the Policies as:

> [A]ny past or present activities allowed under the law and regulations governing services provided by the **Assureds** which are or were performed for [MBIA or any Subsidiary] and, in addition those activities, which are declared in the **Application Form** or which are commenced during the **Policy Period** and [any other related services thereto].

Wood Dec.,[9] Exs. 1 and 3, §II (L) (emphasis in original) (bracketed language appears in 08-09 Policies only). As an initial matter, because the Transformation transactions were specifically authorized by the NYID, and the court ultimately affirmed that decision, they constitute "past or

---

[9] "Wood Dec." refers to the Declaration of James Manners Wood in Support of Defendants' Motion to Dismiss.

present activities allowed under the law and regulations governing services provided." *See ABN Amro Bank N.V.*, 962 N.Y.S.2d at 862-64.[10]

Moreover, the Transformation transactions attacked in the relevant complaints involved core operations of MBIA's insurance business – writing financial guarantee insurance through its insurance company subsidiaries.[11]  The "services provided by the Assureds" are those of a financial guarantor.  For example, the Transformation involved reserving and claims-paying considerations implicated by capital infusion and/or allocation of capital.[12]  The authorization of the Transformation under the relevant law and regulations focused on MBIA's ability to fulfill those core obligations on a current and going forward basis.  *Id.* at 861, 870 n.4.

As a financial guarantor, MBIA must decide in the normal course of its operations how to invest and allocate its available pool of assets to insure against different classes of claims.  The Banks alleged that the Transformation discriminated against them as holders of structured-finance guarantee insurance policies.[13]  The Banks also alleged that the downgrading of MBIA Insurance's credit rating in response to the Transformation reduced the value of their financial guarantee insurance policies issued by MBIA.[14]  The Transformation also implicated MBIA underwriting decisions[15] and reinsurance agreements.[16]

Finally, Underwriters' statement of facts does not discuss one event crucial to the

---

[10] *See also* Article 78 Petition, ¶ 7.

[11] *See* Plenary Complaint, ¶ 5; Article 78 Petition, ¶¶ 44-45; Aurelius Complaint, ¶ 24.

[12] *See* Plenary Complaint, ¶¶ 10, 69-70, 83-98; Article 78 Petition, ¶¶ 86-87, 116-136; Aurelius Complaint, ¶¶ 5, 76-80; CQS Complaint, ¶¶ 5, 33, 62-77.

[13] Plenary Complaint, ¶ 62; Article 78 Petition, ¶¶ 4, 94-96; Aurelius Complaint, ¶ 53.

[14] Plenary Complaint, ¶ 10; Article 78 Petition, ¶¶ 8-9; Aurelius Complaint, ¶ 11; CQS Complaint, ¶ 42.

[15] *See* Plenary Complaint, ¶¶ 6, 12; Article 78 Petition, ¶ 46; Aurelius Complaint, ¶¶ 3, 5; CQS Complaint, ¶¶ 3, 6, 30.

[16] *See* Plenary Complaint, ¶¶ 8, 55; Article 78 Petition, ¶ 61; Aurelius Complaint, ¶¶ 41-43; CQS Complaint, ¶ 36.

evaluation of their motion to dismiss – for the simple reason that at the time they filed their

motion, that event had not yet taken place.  At the time the Complaint in this action was filed,

one claim related to the Transformation Claims, *CQS ABS Master Fund Ltd., et al v. MBIA Inc.,*

*et al.*, remained unresolved.  *See* Compl. ¶¶ 53, 55.  That is no longer the case; the parties have

settled and, on May 2, 2014, the action was dismissed with prejudice.  *See* Request for Judicial

Notice, Ex. E.  Thus, all of the "related" Transformation Claims are now resolved.[17]

## ARGUMENT

**I.**     **MBIA IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON ITS FIFTH CAUSE OF ACTION REQUIRING THE CROSS-MOTION DEFENDANTS TO PAY THE COSTS OF DEFENDING THE TRANSFORMATION CLAIMS**

Underwriters' own motion admits that their Policy obligation to pay defense costs is

triggered, at the latest, when all Claims involving the same or related Wrongful Acts have been

finally resolved.  Defs. Br. at 14 ("Underwriters are not obligated to advance or reimburse Costs,

Charges and Expenses or any other Loss **until the final disposition of a Claim**.") (emphasis

added).  Although the policy language does not, in fact, permit Underwriters to delay their

defense costs payments until the final disposition of any Claim, much less all related Claims (*see*

*infra* Point II), that point is now moot.  With the resolution of the CQS Claim, all of the claims

related to the Transformation Claims have been fully and finally resolved, either by judgment

that specifically confirmed that the subject acts by MBIA were lawfully approved by its

regulator, or by settlement or voluntary dismissal without any admission of liability.[18]

---

[17] In their brief, Underwriters list as additional Transformation Claims four actions not included in MBIA's coverage complaint:  (i) *Third Avenue Trust, et al. v. MBIA Insurance Corp. and MBIA Insurance Corp. of Illinois*, (ii) *Broadbill Partners LP, et al. v. MBIA, Inc. et al.*, (iii) *Bank of America Corporation v. MBIA, Inc., et al.*, and (iv) *MBIA, Inc. v. Bank of America Corporation, et al.*  Defs. Br. at 6 n.4.  Whether or not those additional actions are properly included within the scope of the Transformation Claims relevant to this action, they do not alter the analysis of the issues raised by Underwriters' motion and this cross-motion, because they also have been dismissed.  Request for Judicial Notice, Exs. F, G, H and I.

[18] Underwriters cannot avoid that fact simply because the CQS Claim was still pending at the time the Complaint was filed.  This Court can and should take judicial notice of the stipulation of

Accordingly, the question of whether the Cross-Motion Defendants were required to "advance" defense costs for the Transformation Claims, or whether that obligation arose before the resolution of all individual Transformation Claims, is irrelevant to the resolution of MBIA's Fifth Cause of Action, which seeks a declaration of MBIA's right to coverage for its Transformation Claims defense costs.[19]  Further, because the amounts MBIA spent in defense of the Transformation Claims exceed multiples of the total relevant policy limits, resolution of the Fifth Cause of Action will effectively end the dispute with respect to the 08-09 Policies, and facilitate resolution of any remaining disputes.

Thus, the only issues remaining with respect to Underwriters' obligation to pay for MBIA's defense of the Transformation claims are:  (1) whether Underwriters are required to pay the costs of defending against potentially covered claims whenever the *allegations* of the complaint fall within the policy coverage; and (2), whether the allegations of the Transformation Claims satisfy those standards.  Because the answer to both of those questions is unequivocally "yes," as a matter of law and the undisputed policy language, MBIA is entitled to judgment on the pleadings pursuant to Rule 12(c) with respect to its Fifth Cause of Action.  *See Dingle v. City of New York*, 728 F. Supp. 2d 332, 343-44 (S.D.N.Y. 2010) (Scheindlin, J.); *see also Am. Commercial Lines LLC v. Water Quality Ins. Syndicate*, No. 09 Civ. 7957 (LAK), 2010 WL

---

dismissal of that action, submitted herewith, and consider it in ruling on the motion and cross-motion.  *See, e.g., Rothman v. Gregor*, 220 F.3d 81, 92, 98-99 (2d Cir. 2000); *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (court may consider "matters of which judicial notice may be taken" on Rule 12(b)(6) motion to dismiss.).  The case cited by Underwriters in their May 6 letter, *Perez v. International Brotherhood of Teamsters, AFL-CIO*, No. 00 Civ. 1983 (LAP) (JCF), 2002 WL 31027580 (S.D.N.Y. Sept. 11, 2002) (Cohen Dec., Ex. B), actually confirms that the Court may consider additional facts in opposition to Underwriters' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  *Id.* at *4 (considering statements outside the pleadings in plaintiff's opposition to Rule 12(b)(1) motion to dismiss).

[19] The question of whether the Cross-Motion Defendants should have advanced defense costs during the pendency of the Transformation Claims would still be relevant to MBIA's claim for breach of contract.  However, MBIA moves here only for judgment on the pleadings with respect to its Fifth Cause of Action for declaratory judgment.

1379763, at *2-3 (S.D.N.Y. Mar. 29, 2010).

A. **Underwriters Must Pay MBIA's Costs Of Defending Against Allegations Of Potentially Covered Claims**

1. **The Plain Policy Language Provides That Underwriters Must Pay Amounts MBIA Incurs In Defending Against Allegations Of Liability**

The plain language of the Policies specifically and expressly contemplates that Underwriters will pay the costs of defending MBIA against *potential* liabilities.  The Policies' Insuring Clause mandates that Underwriters pay "Loss," the definition of which separately lists "damages, settlements and **Costs, Charges and Expenses** incurred by any of the **Assureds**." Wood Dec., Exs. 1 and 3, §§ I, II(I) (emphasis in original).  The separate treatment afforded to "Costs, Charges and Expenses" in a stand-alone definition specifically contemplates that Underwriters may be obligated to pay "Costs, Charges and Expenses" regardless of whether MBIA also must pay damages or settlement payments.  Moreover, the term "Costs, Charges and Expenses" itself is further defined to include "reasonable and necessary legal fees and expenses . . . incurred by the **Assureds** in defense of any **Claim**."  *Id.*, § II(F) (emphasis in original).  Most importantly, the definition of "Claim" *is specifically defined to include judicial proceedings or demands for which MBIA "**may be subjected** to a binding adjudication of liability*."  *Id.*, § II(C) (emphasis added).  By their express terms, those provisions obligate Underwriters to pay costs incurred in defending an action that "may" subject MBIA to liability – not only those incurred in connection with an action in which MBIA is ultimately held to have committed a Wrongful Act. That conclusion is further mandated by the Policies' definition of "Wrongful Acts," which specifically provides coverage for "any actual *or alleged* error, omission or act or breach of professional duty in the rendering or failing to render the **Professional Services**."  *Id.*, § II(N) (boldface in original; italics added).[20]

---

[20] Furthermore, when Underwriters intended to tie the applicability of a policy provision to the outcome of the underlying claim, as opposed to its allegations, they did so explicitly.  *See* Wood

New York courts have consistently held that such language obligates the insurer to pay the costs of defense whenever the allegations of the underlying complaint allege a potentially covered claim.  For example, New York courts have long held that policy language providing that the insurer must pay loss "on behalf of" the policyholder, as do the Policies at issue here, requires payment of defense costs as incurred and before any "actual basis" of liability is determined in the underlying claims.  *Lowy v. Travelers Prop. & Cas. Co.*, No. 99 Civ. 2727 (MBM), 2000 WL 526702, at *2-3 (S.D.N.Y. May 2, 2000) (insurer required to pay defense expenses where underlying claim asserted possible basis for coverage, where policy provided for payment of defense expenses "on behalf of" insured); *PepsiCo, Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 659 (S.D.N.Y. 1986) (insurer obligated to pay defense costs as incurred where policy provided for payment of loss "on behalf of" insured); *Fed. Ins. Co. v. Kozlowski*, 792 N.Y.S.2d 397, 398 (1st Dep't 2005).

New York courts have also held that where the term "Wrongful Acts" is defined, as it is here, to include *"alleged"* errors, the insurer is obligated to pay defense costs regardless of the eventual outcome of the action.  In *PepsiCo*, the policy's definition of "Wrongful Acts," like that at issue here, included "any actual *or alleged* error or misstatement or act or omission," but excluded from that definition any matter "excluded by the terms and conditions of this policy." 640 F. Supp. at 659 (emphasis added and omitted).  Based on that limitation, the insurer argued that it was required to pay only those defense costs that were actually determined not to fall within the scope of any policy exclusion, regardless of whether those costs were incurred in connection with a potentially covered claim.  The court rejected that argument, and held that the

---

Dec., Exs. 1 and 3, § III(Q) (excluding coverage for claims for any deliberate breach of law "provided, however, this exclusion shall **only apply upon a final and unappealable adjudication adverse to the Assureds** establishing that such deliberate and knowing violation of any law, enactment or regulation occurred") (emphasis added); § III(E) (including the same final adjudication requirement).

insurer was required to pay the costs of defense until and unless it could prove that there was no

possibility that the claim could be covered under the policy:

> [A] liability insurer has a duty to pay all defense costs until it can confine its duty
> to pay only on those claims it has insured the policy holders against.  Continental
> could excuse itself from the contemporaneous duty **only if it could establish as a
> matter of law that there was no possible factual basis on which it might be
> obligated to indemnify the directors and officers**.

*Id.* at 660 (emphasis added, citations omitted).[21]

Similarly, the plain language of the Policies here expressly contemplates that

Underwriters must pay the costs of defending against not only claims that are ultimately

determined to be covered, but claims that "may" result in the imposition of liability on MBIA

covered by the Policies.  Underwriters' defense costs obligations were therefore triggered by any

claim potentially falling within the coverage of the Policies.

### 2.  The Policy Language Cited By Underwriters Does Not Negate The Policies' Express Imposition Of A Duty To Pay For The Costs Of Defense With Respect To Potentially Covered Claims

In the face of policy language that expressly obligates them to pay the costs of defending

against "proceedings which *may* result in liability" arising from "actual *or alleged* errors"

(emphasis added), Underwriters nonetheless argue that under the Policies "coverage is only

available for defense costs if indemnification is required for the underlying claims."  Defs. Br. at

14.  Taken to its logical, though absurd, conclusion, that would mean that the price to MBIA of

successfully defending against any claim would be to lose its right to the payment of its defense

---

[21] *See also Bodewes v. Ulico Cas. Co*., 336 F. Supp. 2d 263, 270-71 (W.D.N.Y. 2004) (policy
imposing duty to pay defense costs relating to Wrongful Acts obligated insurer to pay those costs
"if the complaint contains any facts or allegations which bring the claim even potentially within
the protection purchased"), *aff'd in relevant part*, 165 F. App'x 125 (2d Cir. 2006); *Syracuse
Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., No. 2012EF63, 2013 WL 3357812, at *5
(N.Y. Sup. Ct. Mar. 7, 2013), *aff'd*, 976 N.Y.S.2d 921 (1st Dep't 2013) (defense costs obligation
triggered where "the information sought meets the standard of a potential claim implicating the
policy's coverage and it cannot be said that there is no possible or factual legal basis upon which
the defendant may eventually be obligated to indemnify the plaintiff").

costs, because no indemnification is ever "required" for a successfully defended claim.[22]  More importantly, that argument is contrary to applicable law and cannot be supported by the policy provisions Underwriters cite.

For example, Underwriters suggest that because their policies do not contain a duty to defend, but "only" a duty to pay defense costs, their payment obligations cannot be triggered by potentially covered claims, but only by claims that are "actually" covered under the policy. Defs. Br. at 15.  New York courts have repeatedly rejected that argument, and hold that whether the insurer is obligated to provide a defense or "only" to pay defense costs, the triggering event is the same:  the assertion of a potentially covered claim.  For example, in *In re WorldCom, Inc. Securities Litigation*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005), the court dismissed the purported "non-duty to defend" distinction in favor of a broad "potential" for coverage test:

> Under New York law, where a contract of insurance includes the duty to defend **or to pay for the defense of its insured,** that duty is a "heavy" one.  **This duty is independent of the ultimate success of the suit against the insured.**  The duty of an insurer to pay an insured's defense costs "is distinct from and broader than its duty to indemnify."  **The duty to pay defense costs "exists wherever a complaint against the insured alleges claims that may be covered under the insurer's policy."**  In sum, the duty to pay defense costs is "construed liberally and any doubts about coverage are resolved in the insured's favor."

354 F. Supp. 2d at 464 (emphasis added, citations and footnote omitted) (quoting *McGinniss v. Emp'rs. Reinsurance Corp.*, 648 F. Supp. 1263, 1271 (S.D.N.Y. 1986) and *Fed. Ins. Co. v. Tyco Int'l Ltd.*, No. 600507/03, 2004 WL 583829, at *6 (N.Y. Sup. Ct. Mar. 5, 2004)).[23]

Nor is Underwriters' position supported by their assertion that, under § IV(F) of the

---

[22] Underwriters have not expressly addressed whether, in stating that "coverage is only available for defense costs if indemnification is required for the underlying claim," they mean to suggest that MBIA would not be covered for the costs of a successful defense.

[23] *See also Burke v. Ulico Cas. Co.*, 165 F. App'x 125, 128 (2d Cir. 2006); *Lowy*, 2000 WL 526702, at *2 n.1 ("[T]here is no relevant difference between the allegations that trigger an insurer's duty to defend and the allegations that trigger an insurer's obligation to pay defense expenses."); *Kozlowski*, 792 N.Y.S.2d at 402 (same); *Syracuse*, 2013 WL 3357812, at *6.

Policies (the "Advancement Provision"), they are not obligated to pay defense costs until final resolution of the Claim, and that the Policies are therefore "indemnity" rather than "liability" policies.  First, the question of whether these are "liability" or "indemnity" policies is a red herring, because, as courts have long held, an insurer's obligations are determined by the policy provisions, not by arbitrary labels assigned to those provisions.[24]  Even if the Advancement Provision permitted Underwriters to withhold payment of defense costs until the resolution of the Claim – which it does not – it would affect only the *timing* of the reimbursement of the defense costs, not the showing required to trigger such reimbursement – *i.e.*, that the allegations in the complaint constitute Wrongful Acts under the Policies.  It certainly would not allow Underwriters to convert their expressly stated obligation to pay for the defense of claims that "may" result in liability based on "allegations" of wrongdoing into an obligation only to pay for defense costs where the policyholder was "actually liable" to the underlying claimant.[25]

That fact is highlighted by Underwriters' inability to cite a single New York case holding that an advancement provision in a policy serves to alter the nature of the events necessary to trigger a duty to pay defense costs.  To the contrary, courts addressing the defense cost issue in

---

[24] Indeed, even the case on which Underwriters themselves rely on this issue, *Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995), referred to a policy as a "liability" policy where the insuring provision provided the insured "will be indemnified" for loss.

[25] In fact, even with respect to *indemnity* payments, Underwriters' arguments are contrary to well-established New York law, which holds that where a policyholder reasonably settles a potentially covered claim, an insurer may not, as a condition of indemnifying the policyholder for that settlement, require the policyholder to prove that it would have been held liable to the underlying claimant.  *See Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. 1368, 1378 (E.D.N.Y. 1988) (Weinstein, J.) (limiting indemnity obligation to actual liability in such a situation would put policyholders in the "hopelessly untenable position of having to refute liability in the underlying action until the moment of settlement, and then of turning about face to prove liability in the insurance action"); *Luria Bros. & Co. v. Alliance Assurance Co*., 780 F.2d 1082, 1091 (2d Cir. 1986) (in order to recover settlement amounts the policyholder need only show "a potential liability on the facts known to the [insured] . . . culminating in a settlement in an amount reasonable").

the context of policies containing advancement provisions routinely determine whether the defense cost obligation has been triggered based on the allegations of the complaint *separately* from the issue of when, under the terms of the advancement provision, the insurer is required to actually make payment.[26]   Underwriters' attempt to turn a provision addressing the timing of payments into a substantive alteration of the scope of coverage must therefore be rejected.

Second, the Advancement Provision in fact does not permit Underwriters to withhold the payment of defense costs until the final resolution of the Claim.  That Provision states that "Underwriters shall reimburse **Loss** only upon the final disposition of any **Claim**."  Wood Dec., Exs. 1 and 3, § IV(F).  However, it then limits the impact of that opening provision with a second clause:  "*provided, however*, that Underwriters at their sole discretion *agree to advance* **Costs, Charges and Expenses** *every 90 days*."  *Id.* (boldface in original; italics added).  Indisputably, even without an express provision allowing them to do so, Underwriters could always elect to pay defense costs every 90 days.  Thus, if, as Underwriters suggest, the purpose of the second clause was to provide Underwriters with the "option" to make those payments at its discretion, it would be wholly superfluous– a result contrary to black-letter New York insurance law.[27]

The "discretion" actually afforded to Underwriters by the Provision – and that which Underwriters would not have without the provision – is to delay payment of costs for 90 days after they are incurred and to pay those amounts that Underwriters do not in good faith dispute as

---

[26] *See Kozlowski*, 792 N.Y.S.2d at 402-03 (affirming trial court's finding that a duty to pay defense costs "turns solely" on allegations in the complaint and only then addressing the policy's advancements provision); *Syracuse Univ.*, 2013 WL 3357812, at *5 (first determining that the defense payment obligation was triggered because the underlying claims potentially fell within the policy's coverage, and only then "[h]aving so found," holding that the insurer also had a duty to advance defense costs).

[27] *Cf. Aspen Ins. UK, Ltd. v. Fiserv, Inc.*, No. 09 Civ. 02770 (CMA) (CBS), 2010 WL 5129529, at *6-7 (D. Colo. Dec. 9, 2010) (interpreting discretionary advancement provision in professional liability policy narrowly to only give underwriter discretion where insured did not submit a prior written request for advancement, in order to give effect to all relevant policy terms).

unreasonable.  New York courts have held that a promise to pay amounts "on behalf of" the

policyholder, such as that contained in the Policies here, requires *immediate, contemporaneous*

payment of such costs.  As the court held in *Nu-Way Environmental, Inc. v. Planet Insurance*

*Co.*, No. 95 Civ. 573 (HB), 1997 WL 462010 (S.D.N.Y. Aug. 12, 1997), "pay on behalf"

language contemplates a duty to pay defense costs as incurred, as opposed to indemnification

upon resolution of the underlying claims, and "**absent express language to the contrary**," that

language imposes on the insurer "**a duty to pay the insured's defense costs as they come due**."

1997 WL 462010, at *2 (emphasis added) (citing A. Windt, *Insurance Claims & Disputes*, § 6.20

(3d ed. 1995)).[28]

The Advancement Provision does not constitute "express language to the contrary"

negating the Policies' promise to pay defense costs "on behalf of" MBIA.  Rather it *confirms* that

Underwriters will advance those amounts.  What it *does* do is alter the timing of Underwriters'

obligations.  Rather than being obligated to pay defense costs immediately when they are

incurred, as both the insuring agreement and the applicable law would require, the second clause

of § IV(F) provides that Underwriters have the discretion to advance those amounts every 90

days.  That reasonable interpretation thus gives a specific purpose to the second clause of the

provision – in contrast to Underwriters' interpretation, under which the provision does nothing

more than give Underwriters the "discretion" to do that which they had the right to do anyway –

and must therefore be adopted.[29]

---

[28] *See also PepsiCo*, 640 F. Supp. at 659 (promise to pay defense costs arising from wrongful
acts applies when the costs are incurred and paid); *In re WorldCom*, 354 F. Supp. 2d at 464-65
(same).

[29] *See Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 969
N.Y.S.2d 808, 813 (N.Y. 2013).  Further, even if the Court were to find that Underwriters'
reading of the Advancement Provision was a reasonable interpretation, which it is not, MBIA's
reading is, at the very least, also a reasonable interpretation, and must therefore be adopted as a
matter of black-letter insurance law.  *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 357
N.Y.S.2d 705, 708 (N.Y. 1974); *Woods v. Gen. Accident Ins.*, 738 N.Y.S.2d 791, 792 (4th Dep't
2002).

In this case, of course, the time for that dispute has passed. Underwriters did not reimburse the costs of MBIA's defense as they were incurred, or even within 90 days of their being incurred. While that will be relevant to MBIA's claim for breach, however, neither logic nor the law permit converting the Advancement Provision from one dealing solely with the *timing* of payment into a basis for denying substantive amendment of the *grounds* for payment.

### 3. The Cases Cited By Underwriters Actually Support MBIA, As They Show That Underwriters Could Have, But Did Not, Include Language In The Policies Necessary To Their Proffered Interpretation

Finally, the cases Underwriters cite as supposedly holding that their defense payment obligation is limited to claims requiring indemnity involve specific policy limitations not found in the Policies at issue here.[30] In particular, the policies at issue in *Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995), expressly limited the insurer's liability to defense costs "paid as a consequence ***of any occurrence covered hereunder***." 73 F.3d at 1219 (emphasis added). The plain language of the policy thus required a finding of a covered occurrence, and contained none of the promises in the Policies at issue here to pay the costs incurred in connection with proceedings that "may" result in liability or settlements based on "alleged" wrongful conduct. Similarly, the court in *ERC Industries, Inc. v. National Union Fire Insurance Co. (In re Kenai Corp.)*, 136 B.R. 59 (S.D.N.Y 1992), did not rely on policy language comparable to that in the Policies. Instead, the court based its holding on the earlier case *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Ambassador Group, Inc. (In re*

---

[30] Indeed, several of the "authorities" on which Underwriters rely do not even address the standard for an insurer's defense duties. *See Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 488 N.Y.S.2d 139 (N.Y. 1985) (analyzing duty to pay settlement amounts); *George Muhlstock & Co. v. Am. Home Assur. Co.*, 502 N.Y.S.2d 174 (1st Dep't 1986) (same); *Erdman v. Eagle Ins. Co.*, 502 N.Y.S.2d 174 (1st Dep't 1986) (evaluating whether language in release relieved insurer of liability under a duty to defend policy); *Health-Chem Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 559 N.Y.S.2d 435 (N.Y. Sup. Ct. 1990) (addressing allocation between defense costs for admittedly covered parties and admittedly non-covered parties). *Pfizer, Inc. v. Stryker Corp.*, 385 F. Supp. 2d 380 (S.D.N.Y. 2005), does not even involve an insurance policy, but rather an indemnification agreement in a purchase contract.

*Ambassador Group, Inc. Litigation)*, 738 F. Supp. 57 (S.D.N.Y. 1990), which turned on a priority of payments provision in the policy at issue expressly limiting the available coverage for defense costs based on the amounts already paid in liability.  136 B.R. at 63 n.6; *see also Nu-Way Envtl., Inc.*, 1997 WL 462010, at *3 (distinguishing cases with priority of payments clause with respect to defense costs coverage).

The material differences between the policy language at issue in *Stonewall* and *In re Ambassador Group*, and the language of the Policies here, does not merely render those cases inapposite.  It shows that Underwriters, sophisticated insurers, could have written their Policies to limit the payment of defense costs only to covered claims, or claims that result in an actual judgment against or settlement by the insured.  They did not do so.  To the contrary, they issued Policies laden with language promising to pay the costs of defense against "allegations" in connection with proceedings that "may" result in liability against MBIA.  Having done so, they should not now be heard to argue for the enforcement of the policy language they wish they had written, rather than that they actually wrote.

**B.    The Transformation Claims Constitute Potentially Covered Claims**

In a final effort to avoid their obligation to pay for the defense of the Transformation Claims, Underwriters suggest in a footnote that those Claims are not even potentially covered under the terms of the Policies, because they are not "for Wrongful Acts in the performance of Professional Services" or because they might fall within one or more policy exclusions.  Defs. Br. at 18 n.9.  That argument fails as a matter of law and undisputed fact, as the allegations of the Transformation Claims fall precisely within the coverage provided by the Policies.

**1.    The Transformation Claims Allege Wrongful Acts In The Performance Of A Professional Service**

The 08-09 Policies broadly define "Professional Services" as:

*[A]ny past or present activities allowed under the law and regulations governing services provided by the Assureds* which are or were performed for the **Company**

17

and, in addition[,] those activities[] which are declared in the **Application Form** or which are commenced during the **Policy Period** and any other related services thereto.

Wood Dec., Exs. 1 and 3, § II(L) (boldface in original; italics added).

Where a policy thus includes a specific definition of "professional services," New York courts apply that definition as written, in light of the nature of the insured's business and the allegations in the complaint.[31]  Accordingly, a policy providing coverage for a policyholder's "professional services" covers defense costs unless the insurer is able to "rule out the possibility that [the policyholder] performed covered professional services."  *Cont'l Cas. Co. v. JBS Constr. Mgmt., Inc.*, No. 09 Civ. 6697 (JSR), 2010 WL 2834898, at *5 (S.D.N.Y. July 1, 2010); *see also Westport Ins. Corp. v. Hamilton Wharton Grp., Inc.*, No. 10 Civ. 2188 (RMB)(THK), 2011 WL 724737, at *1-2 (S.D.N.Y. Feb. 23, 2011), *aff'd*, 483 F. App'x 599 (2d Cir. 2012).[32]

It is undisputed that the transactions and activities at issue in the Transformation Claims were specifically examined and approved by the NYID – the very body that *sets* the "regulations governing" the insurance services provided by MBIA.  It is equally undisputed that the court in the Article 78 proceeding upheld that approval, and that therefore the Transformation transactions constituted "activities allowed under the law and regulations governing" those

---

[31] Even courts applying *exclusions* for claims alleging "professional services," which must be construed narrowly in favor of the policyholder, have found allegations similar to those in the Transformation Claims to constitute such services  *See, e.g.*, *David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co.*, 934 F. Supp. 2d 533, 542-45 (E.D.N.Y. 2013), *aff'd*, 542 F. App'x 89 (2d Cir. 2013); *Tagged, Inc. v. Scottsdale Ins. Co.*, No. 11 Civ. 127 (JFM), 2011 WL 2748682, at *4-6 (S.D.N.Y. May 27, 2011) (policyholder's regulation of conduct on its social networking website in order to attract users and increase revenues fell within "professional services" exclusion) (applying California law).

[32] Underwriters have previously relied for this point on *Albert J. Schiff Associates v. Flack*, 435 N.Y.S.2d 972 (N.Y. 1980).  In fact, the policy there covered only "negligent acts committed, or alleged to have been committed . . . in the performance of services in the professional capacity of the Assured."  435 N.Y.S.2d at 973.  The court held that because the underlying complaint, brought by *a competitor*, alleged only willful and malicious usurpation of trade secrets, it did not fall within the specific wording of the coverage grant.  Similarly, in *Societe Generale v. Certain Underwriters at Lloyd's, London*, 767 N.Y.S.2d 416 (1st Dep't 2003), the policy limited coverage to professional services "performed for others," which the court held did not apply to claims involving the policyholder's trading *on its own account*.  767 N.Y.S.2d at 416-17.

services.  *ABN Amro Bank N.V.*, 962 N.Y.S.2d at 864.

Neither can it be disputed that the Transformation transactions attacked in the relevant complaints involved core insurance operations, including underwriting decisions, allocation of capital, reserving/claim paying considerations, capital infusion, underwriting decisions and reinsurance agreements.  *See supra* pages 5-6.  As a financial guaranty company, MBIA must decide in the normal course of its operations how to invest and allocate its available assets to insure against different classes of claims.  The crux of the Transformation Claims is that the transactions impaired that core function, and they thus fall squarely under the definition of "Professional Services."  *See Touchette Corp. v. Merchants Mut. Ins. Co.*, 429 N.Y.S.2d 952, 954-55 (4th Dep't 1980) (where underlying complaint alleged policyholder did not succeed in rendering its promised performance, professional services policy provided coverage for the policyholder's defense costs and it was "difficult to imagine" what the policy would otherwise cover).[33]

### 2. Underwriters Cannot Establish That The Transformation Claims Fall Solely And Exclusively Within Any Policy Exclusion

Underwriters' footnote suggestion that the Transformation Claims may be subject to various policy exclusions is wrong, but in any event, wholly irrelevant, because those exclusions cannot affect their duty to pay defense costs.  Under black-letter New York law, Underwriters will not be able to avoid that duty until and unless they can bring the Claims *solely* within the scope of one or more policy exclusions.  *Bodewes*, 336 F. Supp. 2d at 272 (an insurer seeking to invoke an exclusion on defense costs "has the burden to demonstrate that the 'allegations of the

---

[33] Underwriters' further suggestion that the Court will have to determine "whether the payments are Loss insurable under New York law, including payments for unjust enrichment, punitive damages, [and] contractual liability for intentional conduct" (Defs. Br. at 18 n.9), is irrelevant to MBIA's Fifth Cause of Action, which relates solely to the payment of defense costs.  Moreover, because those costs will exhaust the policy limits, it will never be necessary to determine whether any portion of the settlement payments did not constitute a "Loss."

complaint **place that pleading solely and entirely within the policy exclusions**, and, further, that the allegations, *in toto*, are subject to no other interpretation.'") (emphasis in original and added). Underwriters cannot meet that standard.

For example, the policy exclusions for "dishonest or fraudulent acts, improper personal profit or advantage, [and] deliberate breach of law or regulation" cannot apply to any of the Transformation Claims as a matter of law. By their express terms, each of these exclusions applies *only* where there has been *an actual finding in the underlying action* of conduct by the policyholder that would fall within the terms of the exclusion. Wood Dec., Exs. 1 and 3, §§ III(E), (Q). As set forth above, there has not been, and never will be, any such finding with respect to the Transformation Claims. To the contrary, the court in *ABN Amro Bank N.V. v. Dinallo* – the only Transformation Claim to proceed to judgment – held that the NYID's approval of the Transformation was not arbitrary or capricious, nor did it violate the law.

Neither will the undisputed facts here permit Underwriters to bring the Transformation Claims within the scope of any of the other exclusions they list. The "financial guarantee" exclusion listed in the footnote only precludes Underwriters from becoming a co-guarantor of the performance of investments insured by MBIA, and explicitly provides that it "shall not apply in respect of the insurance operations" of MBIA. *See* Wood Dec., Exs. 1 and 3, § III(I). Similarly, the Policies' exclusion for claims brought by or on behalf of any MBIA security holder (*id.*, § III(K)) or for the purchase or sale of MBIA's shares (*id.*, § III(M)) are inapplicable, as the Banks brought their claims as holders of MBIA insurance policies and/or obligations insured by MBIA.[34] Further, the Banks did not seek repayment of fees or other charges paid to MBIA as

---

[34] *See* Plenary Complaint, ¶¶ 6, 15-33; Article 78 Petition, ¶¶ 16-34; Aurelius Complaint, ¶ 61 (class action on behalf of holders of obligations insured by MBIA); CQS Complaint, ¶ 2. The plaintiffs in certain of the underlying actions not at issue in the Complaint, but listed by Underwriters as constituting Transformation Claims (*see supra* n.17), purported to bring their claims at least in part as holders of securities issued by MBIA entities. However, that fact does not alter the analysis, because (1) the defense costs incurred in connection with the remaining

precluded by § III(L); rather, they sought to have MBIA properly render performance for which the Banks paid.[35]  Finally, the Banks' claims were not made at the behest of a governmental agency (*id.*, § III(J)) – to the extent a governmental agency was involved, the Banks' claims were made *against* such agency.[36]  Accordingly, based on the policy language and the undisputed allegations of the Transformation Claims, Underwriters will not be able to establish that any of the exclusions on which they rely are applicable, much less that the Claims fall "solely and exclusively" within their scope.

## II. BECAUSE MBIA'S CLAIMS ARE RIPE FOR RESOLUTION, THE MOTION TO DISMISS MUST BE DENIED

Underwriters' motion to dismiss is based on a single erroneous premise.  They argue that this action will not be ripe until all of the underlying Claims making up at least one category of Claims – whether Bond, Derivatives or Transformation – have been resolved, because not until then will Underwriters' defense payment obligation for any Claim be triggered.  Even under that misguided interpretation of the policy language, Underwriters' motion fails, because the last claim related to the Transformation Claims, the CQS Claim, now has been settled and dismissed. On that basis alone, the Court should deny the motion to dismiss.

But, even if the CQS Claim remained unresolved, Underwriters still would not be entitled to dismissal here, because Underwriters' obligations to pay the costs of MBIA's defense arose long before the resolution of the last "related" Claim in any of the three groups of claims for which MBIA has sought coverage.  Contrary to Underwriters' contentions, the Policies' definition of "Claim" does not provide that all claims involving the same Wrongful Act

---

Transformation Claims will exhaust the policy limits and (2) even those actions cannot be brought "solely and exclusively" within the referenced exclusion to the extent that the plaintiffs *also* asserted rights in capacities other than as holders of MBIA-related securities.

[35] *See* Plenary Complaint, ¶¶ 10, 69-70; Article 78 Petition, ¶¶ 8-9; 86-87; Aurelius Complaint, ¶¶ 5, 11; CQS Complaint, ¶¶ 5, 33, 42.

[36] *See* Article 78 Petition.

constitute a single Claim.  To the contrary, the term "Claim" is unambiguously defined in the Policies as "any judicial . . . proceeding . . . against any of the Assureds . . ." without any reference to a grouping of claims.  Wood Dec., Exs. 1 and 3, § II(C).  Neither do any of the defense provisions in the Policies contain such a limitation on the term "Claim"; to the contrary, the Advancement Provision itself specifically provides that Underwriters are obligated to pay Loss "upon final disposition of *any* Claim." (emphasis added).

Lacking any language in the definition of Claim or the Advancement Provision that will support their position, Underwriters turn instead to § IV(C), the "Limit of Liability, Retentions and Date of Claim" provision, to argue that all Claims involving a single Wrongful Act constitute a single Claim for all purposes under the Policies.  That argument ignores that the § IV(C) "collapsing" of multiple Claims into a single Claim *is specifically tied to that provision's determination of the date on which the Claim arose*:  "More than one Claim involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** *and shall be deemed to have been made at the earliest of the following times: [including] (1) the time at which the earliest* **Claim** *involving the same* **Wrongful Act** *or* **Interrelated Wrongful Acts** *is first made . . . ."*  *Id.* at § IV(C) (emphasis in original and added).  *See* Defs. Br. at 15-16, 19.

Underwriters' assertion that a limitation specifically tied by its express terms to the determination of when a Claim is made should be read as a general limitation on the meaning of the term "Claim" for all purposes under the Policies is directly contradicted by the language of the Policies themselves.  In particular, the capitalized term "Claim" is used throughout the Policies to refer to individual underlying actions and proceedings, including in § IV(C) itself, *which specifically references "the earliest Claim" within a group of Claims.*  *See also* Wood Dec., Exs. 1 and 3, §§ II(C), II(F), III(P), III(R), IV(D).

Moreover, Underwriters' strained interpretation of the policy language has been

expressly rejected by the Second Circuit.  In *Burke v. Ulico Casualty Co.*, 165 F. App'x 125, 128

(2d Cir. 2006), an insurer argued that because coverage for one of three related claims was

barred by the policy's "Insured vs. Insured" exclusion, coverage for all three claims was

similarly barred.  In support of that argument, the insurer relied, as do Underwriters here, on the

policy's limit of liability provision, which treated the three actions as one claim *for purposes of*

*determining the available limits under the policy*.  The Second Circuit rejected that argument:

> We find unconvincing Unico's [sic] argument that the policy defines the term
> "claim" to require the Zamerski, Kohl, and Burke claims, even if legally distinct
> and independent, to be treated as one.  **The policy provides no such general**
> **definition of the term claim.  Nor does it provide such a definition specifically**
> **applicable to the "Insured vs. Insured" exclusion.**  It is only in a clause in the
> section entitled "Limitation on Liability" that the policy provides, for purposes of
> determining its financial caps, that multiple claims arising out of the same
> incident or occurrence be treated as a single claim.

165 F. App'x at 127 n.1 (emphasis added).

Similarly here (and contrary to Underwriters' suggestion (Defs. Br. at 16)), there is

nothing inconsistent in a recognition that Claims arising from the same or interrelated Wrongful

Acts constitute a single Claim *with respect to the determination of when a claim is first made –*

the subject of § IV(C) – but not for other purposes under the Policies.[37]  To the contrary, as the

Second Circuit held in *Burke*, that conclusion is compelled by the fact that neither the general

definition of the term "Claim" nor the defense-related provisions of the Policies provide for such

a "grouping" of multiple "judicial proceedings against the Insured" into a single Claim.

---

[37] Underwriters "support" their assertion that MBIA "submitted all of [each category of cases] as
a single Claim" with statements in the Declaration of Mr. Wood, a Claims Manager for one of
the Defendants, that he "understand[s]" that MBIA seeks coverage for each category of
underlying Claims "as a single claim."  Wood Dec., ¶¶ 8, 11, 13.  Mr. Wood's unsupported
statements of matters not alleged in the Complaint are not properly before the Court on a motion
addressed to the pleadings.  Indeed, because those statements on their face are not made based on
personal knowledge, they would be improper even in the context of a broader motion for
summary judgment.  *See* Fed. R. Civ. P. 56(c)(4).  In any event, however, as set forth above, the
treatment of the Transformation Claims as a single claim for purposes of the date of the claim
but not for other purposes under the Policies is perfectly consistent with the policy language.

Finally, even if Underwriters were correct that their defense obligations have not yet been triggered – which they are not – they still would not be entitled to dismissal of MBIA's claims for declaratory relief.  Under the Declaratory Judgment Act, the Court may declare the rights and other legal relations of parties where there is an actual controversy with respect to those issues, whether or not further relief is or could be sought.  28 U.S.C. § 2201 (2014).  Rather, in deciding whether to entertain an action for declaratory judgment, the Second Circuit has "instructed district courts to ask:  (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).  Applying those standards, courts have routinely held that disputes regarding the scope of and obligations under insurance policies are particularly well-suited to declaratory relief.  *See, e.g.*, *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992); *U.S. Underwriters Ins. Co. v. LCRF Enters., LLC*, No. 10 Civ. 3418 (GBD), 2012 WL 993502, at *5 (S.D.N.Y. Mar. 26, 2012).

Here, Underwriters' own motion papers make clear that there is an existing dispute with respect to coverage under the Policies for the Bond, Derivatives and Transformation Claims. Indeed, the fact that Underwriters and MBIA disagree even as to whether Underwriters' obligations are currently due demonstrates that they have a present dispute.  Where, as here, postponement of judicial decision-making would only delay recovery for plaintiff or a finding with respect to liability, the claim is ripe for review.  *Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, 958 F. Supp. 2d 507, 519 (S.D.N.Y. 2013).[38]

---

[38] Underwriters' cases do not support their position.  In *Ocean Gardens Nursing Facility, Inc. v. Travelers Cos.*, 936 N.Y.S.2d 323 (2d Dep't 2012), the policyholder sought a declaration of its right to indemnity, not defense costs.  Even so, the court *did not* dismiss the declaratory judgment claims as "unripe."  *Id.* at 324.  *King's Gym Complex, Inc. v. Philadelphia Indemnity Insurance Co.*, 314 F. App'x 342 (2d Cir. 2008), and *Sirob Imports, Inc. v. Peerless Insurance Co.*, 958 F. Supp. 2d 384 (E.D.N.Y. 2013), involved first-party property claims in which the

Neither can Underwriters avoid MBIA's declaratory judgment claims by asserting that MBIA has failed to establish a "condition precedent" to coverage because there has been no final determination of MBIA's liability.  Defs. Br. at 19.  To the contrary, the court in *Truax v. State Farm Insurance Cos*., 422 N.Y.S.2d 592 (N.Y. Sup. Ct. 1979), held that a policy provision that barred suit "until the amount of the insured's obligation to pay has been finally determined by judgment or agreement" did not bar the policyholder from seeking a declaratory judgment on defense, even while the underlying action was still pending.  *Id.* at 594.

For more than six years, Underwriters have disputed MBIA's right to coverage, while MBIA incurred tens of millions of dollars in covered defense costs.  The time has come – indeed, has long since passed – for a final resolution of MBIA's coverage claims and a declaration of its right to coverage here.  Accordingly, the motion to dismiss should be denied in all respects.

## CONCLUSION

For the reasons above, Underwriters' motion to dismiss should be denied in its entirety, and MBIA's motion for judgment on the pleadings with respect to its Fifth Cause of Action should be granted in all respects.

---

policyholder either conceded that it had suffered no loss, *King's Gym*, 314 F. App'x at 344, or failed to prove that it had suffered such a loss.  *Sirob*, 958 F. Supp. 2d at 389-90.

Dated:  New York, New York
   May 9, 2014

          KASOWITZ, BENSON, TORRES
            & FRIEDMAN LLP

       By:    /s/  Robin L. Cohen    

         Robin L. Cohen
         Kenneth H. Frenchman
         1633 Broadway
         New York, New York 10019
         Telephone: (212) 506-1700
         Fax:  (212) 506-1800
         rcohen@kasowitz.com
         kfrenchman@kasowitz.com

         *Attorneys for Plaintiff MBIA Inc.*