KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
Robin L. Cohen (rcohen@kasowitz.com)
Kenneth H. Frenchman (kfrenchman@kasowitz.com)
1633 Broadway
New York, NY 10019
212-506-1700
*Attorneys for Plaintiff MBIA Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MBIA INC., )<br>          Plaintiff, )<br>     v. )<br>CERTAIN UNDERWRITERS AT LLOYD'S, )<br>LONDON, LEXINGTON INSURANCE )<br>COMPANY and WURTTEMBERGISCHE )<br>VERSICHERUNG AG, )<br>          Defendants. ) | **No. 14 Civ. 1769 (SAS) (GWG)**<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS**
**CROSS-MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    MBIA'S MOTION IS RIPE ..................................................................................... 1

II.    THE CLAIMS TRIGGER THE DEFENSE PAYMENT OBLIGATIONS ........................ 1

III.    THE CLAIMS ARISE OUT OF PROFESSIONAL SERVICES AND ARE NOT SUBJECT TO THE FINANCIAL SERVICES EXCLUSION ........................................... 6

    A.    The Transformation Transactions Constitute "Professional Services" .................... 6

    B.    The Financial Guarantee Exclusion Is Inapplicable ................................................. 9

CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABN Amro Bank N.V. v. Dinallo*,
  962 N.Y.S.2d 854 (N.Y. Sup. Ct. 2013) ................................................................................... 9

*Albert J. Schiff Assocs., Inc. v. Flack*,
  435 N.Y.S.2d 972 (N.Y. 1980) ................................................................................................. 8

*Am. Auto. Ins. Co. v. Mayfield*,
  287 F. Supp. 2d 661 (N.D. Tex. 2003) .................................................................................... 10

*Bailey v. Fish & Neave*,
  837 N.Y.S.2d 600 (N.Y. 2007) ................................................................................................. 5

*Bendis v. Hartford Accident & Indem. Co.*,
  No. 90 Civ. 2198, 1993 WL 463617 (D. Kan. Sept. 16, 1993) ............................................... 10

*Bd. of Educ. v. CNA Ins. Co.*,
  647 F. Supp. 1495 (S.D.N.Y 1986) .......................................................................................... 5

*Bodewes v. Ulico Cas. Co.*,
  336 F. Supp. 2d 263 (W.D.N.Y. 2004) ................................................................................... 10

*Carlyle Inv. Mgmt. LLC v. Ace Am. Ins. Co.*,
  No. 2013 CA 003190 B (D.C. Super. Ct. May 15, 2014) ......................................................... 7

*Cent. Dakota Radiologists, P.C. v. Cont'l Cas. Co.*,
  769 F. Supp. 323 (D.N.D. 1991) .............................................................................................. 8

*Crum & Forster Managers Corp. v. Resolution Trust Corp.*,
  156 Ill. 2d 384 (Ill. 1993) ......................................................................................................... 8

*Employers Reinsurance Corp. v. Mut. Med. Plans*,
  504 N.W.2d 885 (Iowa 1993) ................................................................................................... 8

*Faconti v. Potter*,
  242 Fed. App'x 775 (2d Cir. 2007) .......................................................................................... 1

*George Muhlstock & Co. v. Am. Home Assurance Co.*,
  502 N.Y.S.2d 174 (1st Dep't 1986) ...................................................................................... 5, 8

*Health-Chem Corp. v. Nat'l Union Fire Ins. Co.*,
  559 N.Y.S.2d 435 (N.Y. Sup. Ct. 1990) ................................................................................... 3

*In re Kenai*,
   139 B.R. 59 (S.D.N.Y. 1992)..................................................................................................4

*Millennium Partners, L.P. v. Select Ins. Co.*,
   882 N.Y.S.2d 849 (N.Y. Sup. Ct. 2009), *aff'd*, 889 N.Y.S.2d 575 (1st Dep't 2009) ................3

*Miller v. Triad Adoption & Counseling Servs., Inc.*,
   133 N.M. 544 (N.M. App. 2003) ...........................................................................................8

*Pepsico, Inc. v. Cont'l Cas. Co.*,
   640 F. Supp. 656 (S.D.N.Y. 1986) .........................................................................................3

*Pfizer, Inc. v. Stryker Corp.*,
   385 F. Supp. 2d 380 (S.D.N.Y. 2005).....................................................................................3

*Propis v. Fireman's Fund Ins. Co.*,
   492 N.Y.S.2d 228 (4th Dep't 1985), *aff'd*, 498 N.Y.S.2d 363 (N.Y. 1985)..............................8

*Rob Levine & Assocs. Ltd. v. Travelers Cas. & Sur. Co. of Am.*,
   No. 13 Civ. 560 (JJM), 2014 WL 406509 (D.R.I. Feb. 3, 2014) ............................................7

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)....................................................................................................1

*Servidone Constr. Corp. v. Security Ins. Co.*,
   488 N.Y.S.2d 139 (N.Y. 1985) ...............................................................................................5

*Societe Generale v. Certain Underwriters at Lloyd's, London*,
   767 N.Y.S.2d 416 (1st Dep't 2003) ........................................................................................8

*St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co.*,
   572 F.3d 893 (11th Cir. 2009) ................................................................................................8

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*,
   73 F.3d 1178 (2d Cir. 1995).................................................................................................4, 5

*Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*,
   357 N.Y.S.2d 705 (N.Y. 1974) .............................................................................................10

*Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*,
   782 N.Y.S.2d 19 (1st Dep't 2004) ..........................................................................................3

*Visiting Nurse Ass'n of Greater Phila. v. St. Paul Fire & Marine Ins. Co.*,
   65 F.3d 1097 (3d Cir. 1995).................................................................................................8, 9

*In re WorldCom, Inc. Sec. Litig.*,
   354 F. Supp. 2d 455 (S.D.N.Y. 2005).................................................................................2, 3

Plaintiff MBIA[1] submits this reply memorandum of law in further support of its cross-motion for partial judgment on the pleadings with respect to its Fifth Cause of Action.

## I.    MBIA'S MOTION IS RIPE

Underwriters cannot and do not dispute that the CQS Claim has been dismissed, that the Transformation Claims have been fully resolved, or that resolution of this motion will streamline the case by resolving coverage as a whole for the 08-09 Policies.  Nonetheless, they insist that the Court must ignore that reality.  Opp. at 10-11.  That position has no merit, and is directly contradicted by *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), which Underwriters themselves cite (Opp. at 10) and which holds that in ruling on the pleadings, a court may rely on materials outside the pleadings that meet the standard for judicial notice.[2]  *See also Faconti v. Potter*, 242 Fed. App'x 775, 777 (2d Cir. 2007) ("matters of which judicial notice may be taken" are properly considered on a Rule 12(c) motion for judgment on the pleadings).[3]

## II.   THE CLAIMS TRIGGER THE DEFENSE PAYMENT OBLIGATIONS

The recurrent theme of Underwriters' brief is their insistence that the Court must apply the "plain and ordinary meaning" of the policy terms.  Opp. at 9; *see also* Opp. at 7, 13.  On that basis, Underwriters assert that the Court should reject MBIA's arguments that the duty to pay defense costs is measured by the underlying allegations, because those arguments "side step" the

---

[1] All capitalized terms have the same meaning as in Plaintiff's Opposition to Defendants' Motion to Dismiss and Cross-Motion for Partial Judgment on the Pleadings ("MBIA Br.").  In addition, "Opp." refers to Defendants' Reply in Further Support of Their Motion to Dismiss and in Opposition to Plaintiff's Cross-Motion for Partial Judgment on the Pleadings.

[2] None of the other cases cited by Underwriters on this issue involve materials properly subject to judicial notice.  Opp. at 10 and cases cited therein.  Moreover, Underwriters will not be "prejudiced" by the fact that "MBIA has provided no other information regarding the settlement" (Opp. at 11), since the defense costs incurred in connection with the Transformation Claims have long since exceeded the Policies' limits.

[3] Underwriters also ignore that the Fifth Cause of Action seeks solely declaratory relief, making any question of discovery relating to "allocation" irrelevant for purposes of this motion.

1

plain policy language to impose on Underwriters a duty to defend.[4]  Opp. at 3, 5.  Underwriters further argue that the Court should instead adopt their policy interpretation, which supposedly adheres to the policy terms.  Yet while advocating adherence to the "plain and ordinary" policy language, Underwriters not only ignore or misinterpret the policy language; in two key instances they *misrepresent* it.

First, Underwriters quote the Advancement Provision as stating that at their discretion they "*may* agree" to advance defense costs every 90 days.  Opp. at 4 (emphasis added).  In fact, the word "may" does not appear in the Provision, which says that at their discretion Underwriters "agree" to advance defense costs every 90 days.  ECF #19-6 at 22.  Second, Underwriters quote the definition of "Professional Services" as consisting of services performed "*by* the Company."  Opp. at 16 (emphasis added).  In fact, the definition refers to services performed "*for* the Company" (ECF #19-6 at 18 (emphasis added)), which, as discussed below (*see infra* Point II(A)), is fatal to Underwriters' key argument that "Professional Services" consist solely of services performed "for others."  Those substantive alterations belie Underwriters' claim to be the defenders of the policy language against MBIA's assaults on its unambiguous meaning.

Even when Underwriters do not misquote the policy language, they ignore it.  In particular, Underwriters claim that their defense payment obligation arises only if "the claims are actually covered" (Opp. at 9) rather than being based on allegations falling within the scope of the Policies.  That assertion ignores that under the *unambiguous* policy language, a claim presenting potential liability based on allegations falling within the policy language *is* a "covered

---

[4] In fact, MBIA does no such thing, and, in particular, does not suggest that Underwriters have any of the obligations that go only with an actual duty to defend, including the duty to hire counsel and direct the defense.  *See In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 464 n.11 (S.D.N.Y. 2005).  Rather, MBIA recognizes that under longstanding New York law, whether a policy imposes a duty to defend or a duty to pay defense costs, as here, that duty is measured by the allegations of the complaint.  *See infra* pp. 3-4.

claim."[5]  The definition of "**Claim**" includes claims under which MBIA *"may"* be held liable, and the unambiguous definition of "**Wrongful Act**" includes "actual *or alleged*" wrongdoing. ECF #19-6 at 17, 19; *see generally* MBIA Br. at 9.  Underwriters offer absolutely no interpretation of those provisions contrary to their plain meaning of requiring payment of Loss for claims that are based *on allegations* falling within the policy coverage.[6]  In fact, after quoting the definitions (Opp. at 15), they never mention them again.

Underwriters afford the same treatment to the Policies' express and unambiguous promise to pay covered amounts "on behalf of" MBIA – admitting that the promise exists (Opp. at 5), and then never mentioning it again.  That omission is crucial, because the promise to pay amounts "on behalf of" MBIA, rather than to "indemnify" MBIA, necessarily indicates that Underwriters will pay such costs directly, when they are due, rather than forcing MBIA to first pay the cost and then later seek indemnification from the insurer.  *See Pepsico, Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 659 (S.D.N.Y. 1986); *In re WorldCom*, 354 F. Supp. 2d at 464.

Contrary to Underwriters' contention, the application of that plain language as written

---

[5] Thus, the cases Underwriters cite as holding that insurers are not obligated to pay for the defense of non-covered claims (Opp. at 6 n.5) are irrelevant here.  Moreover, they do not set "general" standards for the defense of "noncovered claims," but apply express policy limitations on the defense obligation.  *See Millennium Partners, L.P. v. Select Ins. Co.*, 882 N.Y.S.2d 849, 853 (N.Y. Sup. Ct. 2009), *aff'd*, 889 N.Y.S.2d 575 (1st Dep't 2009) (policy exclusion of defense for claims uninsurable under applicable law); *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 782 N.Y.S.2d 19, 20 (1st Dep't 2004) (same); *Health-Chem Corp. v. Nat'l Union Fire Ins. Co.*, 559 N.Y.S.2d 435, 437 (N.Y. Sup. Ct. 1990) (defense obligation expressly limited to amounts paid on behalf of specific individuals).  *Pfizer, Inc. v. Stryker Corp.*, 385 F. Supp. 2d 380 (S.D.N.Y. 2005) did not involve an insurance policy, and thus did not implicate the broad legal duties imposed on insurers with respect to the payment of defense costs.

[6] Further, while Underwriters dismiss as a "straw man" MBIA's argument that Underwriters "have asserted that coverage is only available if liability is established," they continue to argue that defense cost coverage "must be determined by the narrow duty to indemnify."  Opp. at 9.  That suggestion is no "straw man"; it is the logical result of Underwriters' attempt to tie the duty to pay defense costs to the standards applicable to a duty to defend.  If MBIA succeeds in disproving the underlying claim, there is no "duty to indemnify" – and thus, under Underwriters' construction, no duty to pay defense costs.  While Underwriters apparently agree that that is an absurd and unwarranted result, they offer no way to avoid it under their erroneous interpretation.

will not impermissibly convert Underwriters' obligation to pay defense costs into a duty to defend. Opp. at 3. In fact, that assertion ignores longstanding New York case law making clear that the same standard applies to the defense payment obligation regardless of whether a policy imposes a duty to defend or duty to pay defense costs. MBIA Br. at 12 and cases cited therein.[7]

Equally unavailing is Underwriters' strained attempt to effectively rewrite the Policies' Advancement Provision, which deals exclusively with the timing of payments, to substantively alter their obligation to pay defense costs by limiting it only to "covered claims" (Opp. at 6) or claims for which "indemnification is actually required" (Opp. at 5). There is simply no support in the language itself or in the case law for that assertion.[8] The plain language of the Advancement Provision does not purport to alter anything other than the timing of payments; it does not address, much less abrogate, the express promise elsewhere in the Policies to pay Loss incurred in connection with *allegations* of a Wrongful Act. That explains why, despite MBIA's specific challenge in its opening brief that they do so (MBIA Br. at 13), Underwriters are unable to cite a single New York case holding that an Advancement Provision like that at issue here serves to alter not only the timing but the scope of the defense cost payment obligation. Instead, they continue to rely on *Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995), ignoring that the policy language there contained the very limitation that the

---

[7] Underwriters attempt to distinguish those longstanding New York authorities on the ground that the policies at issue did not allow the insurer to delay payment of defense. until the end of the underlying action. Opp. at 6. That is a distinction without a difference. The cases each hold that absent express language to the contrary, even an insurer who has "only" agreed to pay defense costs, rather than to defend, must pay for the defense of potentially covered claims as those costs become due. *See* MBIA Br. at 14-15. They thus negate the prediction of the federal court in *In re Kenai*, 139 B.R. 59 (S.D.N.Y. 1992) – on which Underwriters continue to rely (Opp. at 5 n.3, 6 n.6) – that New York would not require such payments except under a duty-to-defend policy.

[8] At most, the Advancement Provision could relieve Underwriters of the obligation to pay defense costs if, prior to the final resolution of the claim, the underlying plaintiff had abandoned all potentially covered claims and allegations. The Transformation Claims, of course, contained such allegations until the day they were finally resolved. *See* MBIA Br. at 5-6.

Policies here do not:  a provision limiting the insurer's obligation solely to those defense costs "paid as a consequence of any occurrence *covered hereunder*."  73 F.3d at 1219 (emphasis added).[9]  If anything, *Stonewall* confirms that Underwriters are seeking to have the Court write for them more favorable policy language than they wrote for themselves – an outcome prohibited by black-letter New York law.  *See Bailey v. Fish & Neave*, 837 N.Y.S.2d 600, 603 (N.Y. 2007). The actual Advancement Provision provides absolutely no basis for measuring Underwriters' defense payment obligation by the indemnity standards set forth in *Servidone Construction Corp. v. Security Insurance Co.*, 488 N.Y.S.2d 139, 142-43 (N.Y. 1985) and *George Muhlstock & Co. v. American Home Assurance Co.*, 502 N.Y.S.2d 174, 178-79 (1st Dep't 1986).  Opp. at 5 n.4. Neither does it support Underwriters' continued refusal to recognize that *Servidone* involved demands for indemnity payments, not defense costs, or that *Muhlstock* denied the claim for defense costs because the *underlying allegations* did not fall within the scope of coverage.  502 N.Y.S.2d at 177-78.  Most importantly, Underwriters continue to ignore that both cases *specifically* hold that defense is measured by the allegations of the underlying claim.

In any event, even if the Advancement Provision had any relevance to the scope of the defense payment obligation, it still would not justify denial of MBIA's motion, because the Advancement Provision does not give Underwriters unfettered discretion to withhold reasonable defense costs until the resolution of all claims.  Significantly, the Provision does not say, as Underwriters misleadingly argue, that they "may" agree to advance costs – it provides that in their discretion they "agree" to do so.  In response to MBIA's arguments, Underwriters have offered no reason why that clause would be necessary if it did not reflect the obligation, not just

---

[9] Similarly, in *Board of Education v. CNA Insurance Co.*, 647 F. Supp. 1495, 1507 (S.D.N.Y 1986), the only other New York case Underwriters cite on this issue (Opp. at 5 n.3), the policy language expressly provided that "in the event it is finally established the Insurer has no liability hereunder, each [policyholder] agrees to repay to the Insurer, upon demand, all [defense costs] advanced on their behalf."  The Policies here contain no such provision.

the "right," to pay reasonable defense costs within 90 days of demand. In particular, they do not deny that even absent that clause, *they would have the discretion to pay defense costs before the final resolution of any claim, rendering the clause as they interpret it mere surplusage.* *See* Opp. at 8-9. Neither do they make any effort to reconcile their assertion of an unfettered right to withhold defense costs with policy language that requires them to pay loss, including the cost of defense, "on behalf of" MBIA or that bars them from unreasonably withholding consent to such costs. ECF #19-6 at 17, 22.

MBIA's interpretation – that the Advancement Provision gives Underwriters the discretion to make payment of those costs Underwriters deem reasonable within 90 days – suffers from none of these flaws. It gives a real purpose and effect to the clause as a whole, including the opening phrase "*provided, however*," which indicates strongly that the obligations on the timing of defense payments are different from those applicable to other forms of Loss. It does so without negating the express promise to pay defense costs "on behalf of" MBIA rather than merely to reimburse MBIA for those costs. It effectuates the Policies' express provision that Underwriters may not unreasonably withhold consent to MBIA's defense costs. And it recognizes that under New York law, the "default setting" requires contemporaneous payments of such costs under the Policies. Accordingly, even if Underwriters' interpretation were reasonable – which it is not – the Court must adopt MBIA's equally or more reasonable interpretation of the scope of the carve-out for defense cost payments. *See* MBIA Br. at 15 n.29.

### III. THE CLAIMS ARISE OUT OF PROFESSIONAL SERVICES AND ARE NOT SUBJECT TO THE FINANCIAL SERVICES EXCLUSION

#### A. The Transformation Transactions Constitute "Professional Services"

As noted above, in their vain effort to argue that the Transformation Claims do not involve "Professional Services," Underwriters do not merely ignore the policy language; they misrepresent it. The definition of "Professional Services" does not, as Underwriters suggest,

limit that term to services "performed *by* the **Company**." Opp. at 16 (boldface in original, italics added). Rather, "Professional Services" is defined as "any past or present activities *allowed under the law and regulations governing services provided by the* **Assureds** which are or were *performed for the* **Company** . . . ." ECF #19-6 at 18 (boldface in original; remaining emphasis added). Thus, contrary to Underwriters' arguments, the Policies do not cover only "professional services rendered for others" (Opp. at 20), nor activities "in the normal course of [MBIA's] operations" (Opp. at 19), nor "issuing insurance policies, handling claims or providing any other services inherent in MBIA's business as an insurer" (Opp. at 21). Rather, they require only that the act be "allowed under the law and regulations governing" MBIA's services, and that it be "performed for the Company" – as were the Transformation transactions.[10]

As they do with respect to the defense payment obligation, Underwriters attempt to avoid the fact that their position is inconsistent with the Policies' actual definitions by citing to case law for general statements regarding the scope of "professional services." But as one court recently held in supporting a position advocated by insurers, the actual policy language, not general interpretations of its meaning, controls the scope of coverage. *Carlyle Inv. Mgmt. L.L.C. v. Ace Am. Ins. Co.*, No. 2013 CA 003190 B, at *7 (D.C. Super. Ct. May 15, 2014) (attached hereto as Exhibit A) ("whether or not the words [Professional Services] mean something else in the insurance industry outside of the context of this particular contract, those terms are specifically defined in the contract [and] are broad and unambiguous").

Applying the plain meaning of "Professional Services" as defined in the Policies is fatal to Underwriters' arguments. None of the cases they cite contain the broad definition of covered

---

[10] Contrary to Underwriters' argument, the phrase "rendering or failing to render" does not limit the type or nature of activities that trigger coverage under the Policies. In fact, the only case they cite for this proposition, *Rob Levine & Associates Ltd. v. Travelers Casualty & Surety Co. of America*, No. 13 Civ. 560 (JJM), 2014 WL 406509 (D.R.I. Feb. 3, 2014), referred to the term "rendered" to keep the *exclusion* at issue there from barring coverage for activities, including advertising, that were wholly unrelated to the policyholder's provision of legal services.

"Professional Services" at issue here; in fact, many contain no reference to the policy definition at all.[11]  All those that do barred coverage on the basis of express limitations that Underwriters chose not to include in their Policies.  For example, several cases involved express limitations of "professional services" to those services performed "for others."[12]  Other cases specifically delineate the activities constituting "professional services."  The definition in *Albert J. Schiff Associates, Inc. v. Flack*, 435 N.Y.S.2d 972, 973 (N.Y. 1980), for example, was expressly limited to the "performance of services in the professional capacity of the Assured as: (a) Actuaries, (b) Employee Benefit Plan Consultants, and (c) Life Insurance Agents or Brokers."[13]

Underwriters could have limited the definition of "Professional Services" to acts performed for others, or to the payment of claims and issuance of policies by MBIA, or in any of the other ways "Professional Services" was expressly limited in the cases on which Underwriters erroneously rely.  They did not do so – and because they did not, MBIA is entitled to judgment that the Transformation Claims fall squarely within the coverage for claims relating to "Professional Services" as that term is defined in the Policies.

---

[11] *Visiting Nurse Ass'n of Greater Phila. v. St. Paul Fire & Marine Ins. Co.*, 65 F.3d 1097, 1102-03 (3d Cir. 1995); *Miller v. Triad Adoption & Counseling Servs., Inc.*, 133 N.M. 544, 549-50 (N.M. App. 2003); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393-94 (Ill. 1993).

[12] *See Societe Generale v. Certain Underwriters at Lloyd's, London*, 767 N.Y.S.2d 416, 416 (1st Dep't 2003); *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co.*, 572 F.3d 893, 895 (11th Cir. 2009) (professional services defined as "those professional services performed, or failed to be performed *for others"*) (emphasis added); *Employers Reinsurance Corp. v. Mut. Med. Plans*, 504 N.W.2d 885, 887-88 (Iowa 1993) (policy provision specifically limited to claims of negligence in the provision of services "for others" in various specific roles).

[13] *See also George Muhlstock & Co.*, 502 N.Y.S.2d at 175 (defining "Professional Service" as "services performed by and advices given by the insured in conduct of his practice"); *Cent. Dakota Radiologists, P.C. v. Cont'l Cas. Co.*, 769 F. Supp. 323, 325 (D.N.D. 1991) ("professional services" defined as "the furnishing of professional medical or dental services"); *Propis v. Fireman's Fund Ins. Co.*, 492 N.Y.S.2d 228, 231 (4th Dep't 1985), *aff'd*, 498 N.Y.S.2d 363 (N.Y. 1985) ("the policy in issue is even more specifically limited than the *Schiff* policy . . . for it contains additional provisions which unmistakably define the very sort of activities of a life underwriter embraced in the term 'professional services'").

Moreover, MBIA would be entitled to that judgment even under Underwriters' rewrite of the definition of "Professional Services." Underwriters' attempt to equate the Transformation transactions with "preparatory" tasks such as purchasing office furniture or hiring and firing employees (Opp. at 18) is patently insupportable. The Transformation transactions go to the core of MBIA's provision of insurance to its policyholders. The New York court expressly affirmed that the Transformation transactions were undertaken to reallocate assets for the benefit, among others, of MBIA policyholders by reallocating capital and opening up the municipal bond business. *ABN Amro Bank N.V. v. Dinallo*, 962 N.Y.S.2d 854, 864 (N.Y. Sup. Ct. 2013). Underwriters admit that the Transformation Claims included allegations with respect to the impact of the restructuring transactions on MBIA's "ability to pay on its guarantee policies." Opp. at 20. Indeed, Underwriters' own authorities hold that the fact that the Claims were brought by MBIA's policyholders strongly indicates that they were Professional Services claims. *Visiting Nurse Ass'n*, 65 F.3d at 1103 (3d Cir. 1995) ("When the claim is one asserted by the client, . . . it would most likely follow that the claim will be covered by a professional services policy."). In short, the Transformation Claims allege wrongful acts that fall precisely within the Policies' coverage even under the impermissibly narrow scope for which Underwriters argue.[14]

B. **The Financial Guarantee Exclusion Is Inapplicable**

Finally, while having suggested in their opening brief that a host of exclusions could apply to bar coverage for the Transformation Claims (Defs. Br. at 18 n.9), in the end Underwriters rely only on the Financial Guarantee Exclusion to supposedly exclude coverage for

---

[14] Further, contrary to Underwriters' assertion, the recognition that the Transformation Claims fall within the Professional Services coverage here would not mean that "coverage would be available under professional indemnity policies whenever a business providing professional services makes a decision that financially impairs the company." Opp. at 21. That argument ignores that the "Professional Services" provided by MBIA are that of a financial guarantor, and that the Transformation transactions, which were alleged to affect MBIA's ability to provide those financial guarantees, constituted allegations related to the core of MBIA's business.

9

the Transformation Claims.  The express terms of that Exclusion, however, bar coverage only for claims that arise because an investment has failed to perform as promised, or because MBIA has failed to pay out on an insurance policy or "similar instruments."  In addition, it provides that "for the avoidance of doubt, this Exclusion shall not apply in respect of the insurance operations of the Assured."  ECF 19-6 at 20.

Underwriters admit the Banks did not allege that MBIA failed to pay under their policies, or that any investment failed to perform as guaranteed.  Opp. at 24.  They therefore cannot show that the Claims fall "solely and entirely" within the scope of the Exclusion, as they must to avoid coverage here.  *Bodewes v. Ulico Cas. Co.*, 336 F. Supp. 2d 263, 272 (W.D.N.Y. 2004).[15]

Apparently realizing this, Underwriters attempt to expand the scope of the Exclusion to bar coverage for any business step taken by MBIA affecting whether it will be able to meet its financial obligations when they come due.  *See* Opp. at 23-24.  That proposed scope is directly contrary to the Exclusion's express provision that it will not apply "in respect of the insurance operations" of MBIA.  More importantly, it would render the Policies' coverage illusory, as it would bar coverage for liabilities relating to actions taken by MBIA that would in any way affect its ability to make good on the financial guarantees contained in its policies.  Such an interpretation is not only contrary to the policy language, it is impermissible as a matter of New York law.  *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 357 N.Y.S.2d 705, 708 (N.Y. 1974).

## CONCLUSION

For all the foregoing reasons, MBIA requests that the Court grant its motion for partial judgment on the pleadings in all respects.

---

[15] In contrast, in the cases cited by Underwriters on this issue the underlying plaintiffs specifically alleged that the policyholders had failed to make good on the guarantees at issue. *See Am. Auto. Ins. Co. v. Mayfield*, 287 F. Supp. 2d 661, 666 (N.D. Tex. 2003) (allegation that the policyholder's guarantees of the future value of the investments failed where the investments were Ponzi schemes); *Bendis v. Hartford Accident & Indem. Co.*, No. 90 Civ. 2198, 1993 WL 463617, at *2 (D. Kan. Sept. 16, 1993) (policyholder failed to deliver promised stock options).

Dated: New York, New York
June 4, 2014

        KASOWITZ, BENSON, TORRES
          & FRIEDMAN LLP

By:   /s/ Robin L. Cohen

Robin L. Cohen
Kenneth H. Frenchman
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
rcohen@kasowitz.com
kfrenchman@kasowitz.com

*Attorneys for Plaintiff MBIA Inc.*