UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

MBIA INC.,

                 Plaintiff,

      - against -

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, LEXINGTON
INSURANCE COMPANY and
WURTTEMBERGISCHE
VERSICHERUNG AG,

                Defendants.

------------------------------------------------------- X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 7/16/14

**OPINION AND ORDER**

**14-cv-1769**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

MBIA, Inc. ("MBIA") brings this diversity action against certain underwriters at Lloyd's, London ("Lloyd's"), Lexington Insurance Company ("Lexington"), and Wurttembergische Versicherung AG ("WurttVers") (collectively, known as the "Underwriters") for breach of contract and declaratory judgment.

Underwriters now move to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. MBIA cross moves for judgment on

the pleadings with respect to one of its causes of action – declaratory relief for duty to pay defense costs for the Transformation Claims.  For the following reasons, Underwriters' motion to dismiss is GRANTED in part and DENIED in part and MBIA's cross motion is GRANTED.

## II.    BACKGROUND

### A.    The Parties

MBIA is a corporation organized and existing under the laws of Connecticut, with its principal place of business in Armonk, New York.[1]  The members of Syndicates 2987 and 1274 are underwriters at Lloyd's, whose principal place of business is London, England[2] and registration is in the United Kingdom.[3]  These underwriters have substantial business in New York, but are not citizens of New York.[4]  Lexington is a corporation organized and existing under the laws of Delaware, with its principal place of business in Massachusetts, and it has conducted substantial business in New York.[5]  WurttVers is incorporated in Germany, with its principal place of business in Stuttgart, Germany, and it has

---

[1]    *See* Complaint ("Compl.") ¶ 15.

[2]    *See id.* ¶ 16.

[3]    *See* Answer and Affirmative Defenses ¶ 16.

[4]    *See* Compl. ¶ 16.

[5]    *See id.* ¶ 17.

conducted substantial business in New York.[6]

### B.    The Policies

MBIA purchased a Primary Financial Institutions Professional Indemnity Policy (No. 07GPOM2520)[7] and an Excess Financial Institutions Professional Indemnity Policy (No. 07GPOM2521)[8] for Claims made from August 31, 2007 to August 31, 2008.[9]  MBIA renewed the Policies (Primary Policy No. 08GPOM2520[10]; Excess Policy No. 08GPOM2521[11]) from August 31, 2008 to August 31, 2009.[12]  WurttVers did not subscribe to the 08-09 Policies.[13]  The 07-08 Primary Policy and the 08-09 Primary Policy[14] have a limit of liability of $15

---

[6]    *See id.* ¶ 18.

[7]    *See* Exhibit ("Ex.") 1 to Declaration ("Decl.") of James Manners Wood, Claims Manager at Brit Global Speciality and Syndicate 2987 at Lloyd's ("07-08 Primary Policy").

[8]    *See* Ex. 2 to Wood Decl. ("07-08 Excess Policy").

[9]    *See* Compl. ¶¶ 8, 56(a–b).

[10]    *See* Ex. 3 to Wood Decl. ("08-09 Primary Policy").

[11]    *See* Ex. 4 to Wood Decl. ("08-09 Excess Policy").

[12]    *See* Compl. ¶¶ 8, 56(c–d)

[13]    *See* Defendants' Answer and Affirmative Defenses ¶ 4.

[14]    *See* 07-08 Primary Policy and 08-09 Primary Policy (collectively, the "Primary Policies").

million.[15]  The 07-08 Excess Policy and the 08-09 Excess Policy[16] have a limit of liability of $15 million excess of the Primary Policy covering the same period.[17]

### C.   Definitions

The Primary Policies provide: "Underwriters shall pay on the behalf of the Assureds for Loss resulting from any Claim first made during the Policy Period for a Wrongful Act in the performance of Professional Services."[18]

A "Claim" is "any judicial, administrative proceeding (including any appeal therefrom) and written demands for monetary, non-monetary or injunctive relief against any of the Assureds in which they may be subjected to a binding adjudication of liability or any settlement agreed by Underwriters for damages or other relief."[19]  "More than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to constitute a single Claim . . ."[20]

"Wrongful Act" is "any actual or alleged error, omission or act or

---

[15]     *See* Primary Policies Item C and Item D.

[16]     *See* 07-08 Excess Policy and 08-09 Excess Policy (collectively, the "Excess Policies").

[17]     *See id.* Schedule:  Limit of Liability.

[18]     Primary Policies § I.

[19]     *Id.* § II(C).

[20]     *Id.* § IV(C).

breach of professional duty in rendering or failing to render the Professional Services."[21]  "Interrelated Wrongful Acts" means "Wrongful Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions."[22]  "Professional Services" includes "any past or present activities allowed under the law and regulations governing services provided by the Assureds which are or were performed for [MBIA and/or its Subsidiaries] and, in addition those activities, which are declared in the Application Form or which are commenced during the Policy Period."[23]

"Loss" includes "Costs, Charges and Expenses incurred by any of the Assureds," with several exceptions not applicable here.[24]  "Costs, Charges and Expenses" are "reasonable and necessary legal fees and expenses . . . incurred by the Assureds in defense of any Claim . . ." with several exceptions not applicable here.[25]  "Underwriters shall reimburse Loss only upon the final disposition of any Claim; provided, however, that Underwriters at their sole discretion agree to

---

[21]     *Id.* § II(N).

[22]     *Id.* § II(H).

[23]     07-08 Primary Policy § II(L); 08-09 Primary Policy § II(L) (". . . during the Policy Period and any other related services thereto").

[24]     Primary Policies § II(I).

[25]     *Id.* § II(F).

advance Costs, Charges and Expenses every 90 days."[26]

The Preamble to the Primary Policies states: "This policy does not provide for any duty by Underwriters to defend any of the Assureds."[27]  The Primary Policies' "Settlements and Defense" states:  "It shall be the duty of the Assured and not the duty of Underwriters to defend Claims."[28]

"No action shall lie against Underwriters unless, as a condition precedent thereto, the Assureds shall have fully complied with all of the terms of this Policy, nor until the amount of the Assureds' obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and Underwriters."[29]

### D.    Events Preceding the Complaint

MBIA writes financial guarantee policies through its subsidiaries – MBIA Insurance Corporation ("MBIA Insurance") and National Public Finance Guarantee Corporation of Illinois ("National") – for structured finance products (*e.g.*, collateralized debt obligations or mortgage-backed securities) and public

---

[26]    *Id.* § IV(F).

[27]    *Id.* Preamble.

[28]    *Id.* § V(B).

[29]    *Id.* § X.

finance bonds (*e.g.,* municipal bonds), respectively.[30]  In February 2009, MBIA separated their subsidiaries[31] to provide municipal and state issuers frozen out of the public finance market with financial guarantee policies, while attracting capital investment to the benefit of the holding company and all policyholders (the series of transactions that implemented this change is referred to as the "Transformation").[32]  This action was subsequently approved by the New York State Insurance Department ("NYID"),[33] which is the body that regulates the insurance services provided by MBIA.

### E.    Underlying Cases

#### 1.    Bond Cases

In July 2008, MBIA was named as a defendant in a number of lawsuits by several public entities and others who had purchased bond insurance from MBIA (collectively, the "Bond Cases").[34]  In these suits plaintiffs alleged that MBIA committed negligence, among other things, in the sale and underwriting of

---

[30]    *See* Compl. ¶¶ 3, 7, 22, 44.

[31]    *See id.* ¶ 6.

[32]    *See id.* ¶¶ 44-45.

[33]    *See id.* ¶ 44.  *See also ABN Amro Bank N.V. v. Dinallo*, 962 N.Y.S.2d 854 (Sup. Ct. N.Y. Co. 2013).

[34]    *See id.* ¶¶ 26, 27.

financial guarantee insurance for the plaintiffs' public finance bonds as well as wrongful acts in the bidding for and sale of municipal derivatives to plaintiffs.[35] On March 11, 2010, MBIA was named as a defendant in *City of Phoenix v. Ambac Financial Group, Inc., et al.* ("Phoenix") based on improper credit ratings resulting in unfair insurance premiums.[36]  Many of the Bond Cases are still pending.[37] MBIA sought coverage for the Bond Cases as a single Claim under the 07-08 Policies.[38]

### 2. Derivatives Cases

In July 2008, lawsuits were filed against MBIA alleging that MBIA and others allocated the municipal derivatives market among themselves and rigged the bidding system through which plaintiffs purchased municipal derivatives and assigned plaintiffs lower interest rates, charged them higher fees, and subjected them to unnecessarily high risks (collectively, "Derivatives Cases").[39]  The Derivatives Cases remain pending in the consolidated proceeding

---

[35]     *See id.* ¶ 5.

[36]     *See id.* ¶ 34.

[37]     *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Def. Mem.") at 9.

[38]     *See id.* at 6.

[39]     *See* Compl. ¶¶ 35-37.

in *In re Municipal Derivatives Antitrust Legislation*.[40]  MBIA submitted all of the Derivative Cases as a single Claim under the 07-08 Policies.[41]

MBIA has incurred millions of dollars in defense costs defending the Bond Cases, the Phoenix Case, and the Derivatives Cases (collectively, the "Municipal Claims").[42]  MBIA has settled two of the Municipal Claims for approximately $1.2 million.[43]  All of the other underlying lawsuits are still pending.[44]

### 3.     Transformation Cases

MBIA, MBIA Insurance, and National were named defendants in lawsuits alleging that MBIA's Transformation was improper because it deprived plaintiffs of the benefits of the financial guarantee insurance MBIA sold to the plaintiffs and lowered the credit rating of MBIA Insurance (collectively, "Transformation Cases"):[45]  Plaintiffs alleged that this had the effect of decreasing

---

[40]     *See* Def. Mem. at 11.

[41]     *See id.* at 6.

[42]     *See* Compl. ¶ 40.

[43]     *See id.* ¶ 41.

[44]     *See id.*

[45]     *See id.* ¶¶ 7, 46-48.

the value of the structured finance instruments MBIA guaranteed.[46]  Moreover, plaintiffs alleged that following the Transformation, MBIA lacked the necessary assets to perform its obligations under the structured finance guarantee policies and MBIA favored its public finance bond insurance clients over its structured finance clients.[47]  The lawsuits include:  (1) *Aurelius Capital Master, Ltd., et al. v. MBIA, Inc., et al.* ("Aurelius Action"); (2) *ABN Amro Bank N.V., et al. v. MBIA, Inc., et al.* ("ABN Amro Action"); (3) *ABN Amro Bank N.V., et al. v. Dinallo, et al.* ("Article 78 Action").  The New York Supreme Court rendered judgment in favor of MBIA in the Article 78 Action.[48]

MBIA submitted all of the Transformation Cases as a single Claim under the 08-09 Policies.[49]  A few years later a similar lawsuit was filed against MBIA, MBIA Insurance, and National.[50]  The rest of the Transformation Cases, except the CQS Claim, were settled or dismissed by the time the Complaint was

---

[46]        *See id.*

[47]        *See id.* ¶ 49.

[48]        *See id.* ¶ 54.

[49]        *See* Def. Mem. at 6.

[50]        *See CQS ABS Master Fund Ltd., et al. v. MBIA Inc., et al.*, No. 12 Civ. 6840 (S.D.N.Y.) (the "CQS Claim").  *See also* Compl. ¶ 53.

filed.[51]  On May 2, 2014, after the Complaint was filed, the CQS Claim was settled

and dismissed with prejudice.[52]  MBIA's counsel informed Underwriters of this

fact on May 2, 2014[53] and Underwriters acknowledged this notice.[54]  MBIA has

incurred tens of millions of dollars defending against the Transformation Cases,[55]

an amount greater than the limits of the 08-09 Policies.[56]

Underwriters issued insurance policies to MBIA to provide insurance

coverage for MBIA and its subsidiaries for losses from services which MBIA

provides.[57]  Underwriters have refused to advance MBIA money for their defense

costs or settlement, arguing that the Policies only require the Underwriters to make

payment after the final disposition of all related or identical underlying claims.[58]

Thus, Underwriters take the position that MBIA is not yet entitled to reim

---

[51]     *See id.* ¶¶ 55, 69.

[52]     *See* CQS Claim's Stipulation of Dismissal with Prejudice Pursuant to
Fed. R. Civ. P. 41(A)(1)(a)(ii), No. 12 Civ. 6840 [Docket No. 98].

[53]     *See* Ex. A to Declaration of Robin L. Cohen ("Cohen Decl."), counsel
to MBIA ("MBIA's Letter to Underwriters RE CQS").

[54]     *See* Ex. B to Cohen Decl.

[55]     *See* Compl. ¶ 52.

[56]     *See id.* ¶ 69.

[57]     *See id.* ¶ 4.

[58]     *See id.* ¶¶ 9, 10, 67.

bursement.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when a federal court lacks subject matter jurisdiction, "the statutory or constitutional power to adjudicate [a claim]."[59]  Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.[60]  A federal court may only exercise jurisdiction over live cases and controversies.[61] "[T]he Supreme Court has made clear that [there should be] federal jurisdiction over only a special and small category of cases."[62]

In considering a motion to dismiss for lack of subject matter jurisdiction, "'the court must take all facts alleged in the complaint as true and

---

[59]   *Diagnostic Cardioline Monitoring of N.Y., Inc. v. Leavitt*, 171 Fed. App'x 374, 375 (2d Cir. 2006).

[60]   *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).  *See also Goonewardena v. New York*, No. 05 Civ. 8554, 2007 WL 510097, at * 6 (S.D.N.Y. Feb. 14, 2007) ("[T]he burden of demonstrating that the court has subject matter jurisdiction over the case falls on the plaintiff[,] as it is the plaintiff who seeks to invoke the court's jurisdiction.").

[61]   *See Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001) (citation omitted).

[62]   *In re Standard & Poor's Rating Agency Litigation*, No. 13 MDL 2446, 2014 WL 2481906, at *10 (S.D.N.Y. June 3, 2014).

draw all reasonable inferences in favor of plaintiff.'"[63]  However, "'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"[64]  In fact, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."[65]  "In deciding the motion, the court 'may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits.'"[66]

### 1.    Ripeness

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[67]

---

[63]     *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).

[64]     *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  *Accord London v. Polishook*, 189 F.3d 196, 199 (2d Cir. 1999) (citations omitted) ("[I]t is the affirmative burden of the party invoking [federal subject matter] jurisdiction . . . to proffer the necessary factual predicate [—] not just an allegation in a complaint [—] to support jurisdiction.").

[65]     *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

[66]     *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 580–81 (S.D.N.Y. 2010) (alteration in original) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).

[67]     *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).

-13-

In its constitutional dimension, the ripeness doctrine "'prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur.'"[68]  In this respect, ripeness overlaps with standing, and a showing that a claim is sufficiently "actual and imminent" to constitute an Article III injury in fact is normally sufficient to establish that the claim is constitutionally ripe for review.[69]

Under the prudential doctrine of ripeness, "when a court declares that a case is not prudentially ripe, it means that the case will be better decided later and that the parties will not have constitutional rights undermined by the delay."[70] "[T]he fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration must inform any analysis of ripeness."[71]

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[72]

---

[68]     *Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217, 226 (2d Cir. 2008) (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002)).

[69]     *Id.*

[70]     *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003).

[71]     *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985).

[72]     *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks omitted).

However, "[t]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should focus on the practical likelihood that the contingencies will occur."[73]

### B.    Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."[74]  The court evaluates the complaint under the "two-pronged approach" set forth in *Ashcroft v. Iqbal.*[75]  *First*, a court may "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[76]  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to withstand a motion to dismiss.[77]  *Second*, "'[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

---

[73]    *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001).

[74]    *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013) (citing *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007)).

[75]    556 U.S. 662, 679 (2009).

[76]    *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

[77]    *Id.* (quoting *Iqbal*, 556 U.S. at 678).

plausibly give rise to an entitlement for relief.'"[78]

   To survive a Rule 12(b)(6) motion to dismiss, the allegations in a complaint must meet a standard of "plausibility."[79]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[80] Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[81]

   In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider "only the complaint, . . . any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."[82]  Allegations in the complaint that are "contradicted by more specific allegations or documentary evidence" are not

---

[78] *Taveras v. UBS AG*, 513 Fed. App'x 19, 22 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

[79] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

[80] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[81] *Id.* (quotation marks and citation omitted).

[82] *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (citing *In re Citigroup ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011) (quotation marks omitted)).

entitled to a presumption of truthfulness.[83]

### C.   Rule 12(c) Judgment on the Pleadings

At any time after the pleadings are closed, but before trial commences, a party may move for judgment on the pleadings under Rule 12(c).[84] "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'"[85]

"[T]he legal standards of review for motions to dismiss and motions for judgment on the pleadings 'are indistinguishable.'"[86]   "On a motion to dismiss or for judgment on the pleadings [courts] 'must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"[87] Courts are not bound to accept as true legal conclusions couched as factual

---

[83]   *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 175 n.1 (2d Cir. 2013) (citing *L-7 Designs, Inc. v. Old Navy*, *LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

[84]   *See* Fed. R. Civ. P. 12(c).

[85]   *Dargahi v. Honda Lease Trust*, 370 Fed. App'x 172, 174 (2d Cir. 2010) (quoting *Burns Int'l Sec. Servs., Inc. v. International Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).

[86]   *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *DeMuria v. Hawkes*, 328 F.3d 704, 706 n.1 (2d Cir. 2003)).

[87]   *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).

allegations.[88]  The court "may consider the facts alleged in the complaint,
documents attached to the complaint as exhibits, and documents incorporated by
reference in the complaint."[89]

## IV.    APPLICABLE LAW

### A.    Breach of Contract

The elements of breach of contract under New York law are well
established: "(1) the existence of a contract between [the plaintiff] and th[e]
defendant; (2) performance of the plaintiff's obligations under the contract; (3)
breach of the contract by th[e] defendant; and (4) damages to the plaintiff caused
by th[e] defendant's breach."[90]

"Under New York law, a condition precedent is an act or event which
must occur before another party's duty to perform its promise arises."[91]
"Conditions are not favored under New York law, and in the absence of

---

[88]    *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[89]    *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[90]    *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52
(2d Cir. 2011).

[91]    *LaSalle Bank Nat. Assoc. v. Citicorp Real Estate, Inc.*, No. 02 Civ.
7868, 2003 WL 21671812, at *3 (S.D.N.Y. July 16, 2003).

unambiguous language, a condition will not be read into the agreement."[92]

## B.  Duty to Defend

An insurer's duty to defend is "exceedingly broad"—much broader than the duty to indemnify.[93]  The insurer must defend "'whenever the four corners of the complaint suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage'" under the policy.[94]  An insurer cannot ignore information supplied by the insured in assessing its duty to defend.[95]

---

[92]     *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1100 (2d Cir. 1992).

[93]     *See International Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002) (quoting *Continental Cas. Co. v. Rapid–Am. Corp.*, 80 N.Y.2d 640, 648 (1993)).  *Accord Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006).

[94]     *Maryland Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003) (quoting *Continental*, 80 N.Y.2d at 648).  *Accord Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 256–57 (S.D.N.Y. 2011) (noting that New York law permits consideration of facts extrinsic to the four corners of the complaint in determining a duty to defend); *Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 67 (1991) (holding that "rather than mechanically applying only the 'four corners of the complaint' rule . . . the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage").

[95]     *See Auriemma v. Biltmore Theatre, LLC*, 82 A.D.3d 1, 13 (1st Dep't 2011) (finding duty to defend where insurer had "actual notice of the possibility of coverage from [insured's] answers to the complaints . . . and its deposition testimony"); *Staten Island Molesi Soc. Club, Inc. v. Nautilus Ins. Co.*, 39 A.D.3d 843, 845 (2 Dep't 2007) (insurer cannot ignore information supplied by the insured in determining duty to defend).

An insurer may avoid its duty to defend only if it establishes, as a matter of law, that "there is no possible factual or legal basis on which [the insurer] might eventually be obligated to indemnify [the insured] under any provision of the insurance policy."[96]

### C.   Declaratory Judgment

The party seeking a declaratory judgment bears the burden of "establishing the existence of an actual case or controversy."[97]  An actual controversy has been defined as one that is "real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[98]  That a party's liability may be contingent "'does not necessarily defeat jurisdiction of a declaratory judgment action.'"[99]  Instead, "'courts should focus on the practical

---

[96]   *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (quotation marks and citations omitted).  *Accord Maryland Cas. Co.*, 332 F.3d at 160; *State Farm Fire & Cas. Co. v. Joseph M.*, 106 A.D.3d 806, 807 (2d Dep't 2013).

[97]   *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 98 (2d Cir. 2011) (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993)); 28 U.S.C. § 2201(a).

[98]   *E.R. Squibb & Sons, Inc.*, 241 F.3d at 177 (citation omitted).

[99]   *SR Int'l Bus. Ins. Co. v. Allianz Ins. Co.*, 343 Fed. App'x 629, 632 (2d Cir. 2009) (citation omitted) (quoting *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992)).

likelihood that the contingencies will occur[].'"[100]

In a declaratory judgment case, the court will consider:  "'(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved[,] and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.'"[101]  In deciding whether a plaintiff has stated a claim for declaratory relief, a federal court applies the substantive state law of the forum in which it sits.[102]

## V.   DISCUSSION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  This action is between a citizen of a State and citizens or subjects of foreign states, and the amount in controversy exceeds $75,000.  The Policies provide that coverage is governed by New York law.[103]

### A.   Definition of Claim

---

[100]    *Employers Ins. of Wausau v. Fox Entm't Grp.*, 522 F.3d 271, 278 (2d Cir. 2008) (citation omitted) (alteration in original) (quoting *E.R. Squibb & Sons, Inc.*, 241 F.3d at 177).

[101]    *Niagara Mohawk Power Corp. v. Hudson River-Black River*, 673 F.3d 84, 105 (2d Cir. 2012) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)).

[102]    *See NAP, Inc. v. Shuttletex, Inc.*, 112 F. Supp. 2d 369, 372 (S.D.N.Y. 2000).

[103]    *See* Primary Policies:  Choice of Law.

-21-

"More than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to constitute a single Claim . . ."[104] Consistent with this definition, MBIA submitted the Bond Cases as a single Claim, the Derivative Cases as a single Claim, and the Transformation Cases as a single Claim.[105]  MBIA cannot now argue that Claims involving identical or interrelated wrongful acts constitute a single Claim with respect to submission, but do not constitute a single Claim for other applications of the Policies.  A Claim can be brought only when all underlying lawsuit involving identical or interrelated wrongful acts have reached final disposition.

Underwriters have no obligation to pay any Loss until final disposition of a Claim.[106]  Therefore, if one underlying lawsuit involving the same or interrelated wrongful acts is not yet resolved, Underwriters are not required to reimburse MBIA for any Loss.[107]  Thus, Underwriters have no obligation to cover the Municipal Claims, because some of the underlying suits are still pending.[108]

### B.   Underwriters Have a Duty to Indemnify But Not to Defend

---

[104]   *Id.* § IV(C).

[105]   *See* Def. Mem. at 6.

[106]   *See* Primary Policies § IV(F).

[107]   *See* Def. Mem. at 16.

[108]   *See* Compl. ¶ 41.

The "Declarations" and "Settlements and Defense" sections of the Primary Policies explicitly state that Underwriters do not have a duty to defend.[109] By reading the Policies as they would be "interpreted in light of common speech and the reasonable expectations of a businessperson,"[110] Underwriters have no duty to defend MBIA.  "[I]n the absence of a policy provision expressly imposing a duty to defend, New York courts will not find such a duty."[111]

"The duty to defend is measured against the allegations of [the] pleadings but the duty to [indemnify] is determined by the actual basis for the insured's liability to a third person."[112]  The Policies state that "Underwriters shall reimburse Loss only upon the final disposition of any Claim; provided, however, that Underwriters at their sole discretion agree to advance Costs, Charges and Expenses every 90 days."[113]  The second clause provides an exception to the first

---

[109]    *See* Primary Policies Preamble; Primary Policies § V(B).

[110]    *Zahler v. Twin City Fire Ins. Co.*, No. 04 Civ. 10299, 2006 WL 846352, at *4 (S.D.N.Y. Mar. 31, 2006) (quotations omitted).

[111]    *Lowy v. Travelers Prop. and Cas. Co.*, No. 99 Civ. 2727, 2000 WL 526702, at *3 (S.D.N.Y. May 2, 2000).

[112]    *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.* (citing *Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)).

[113]    Primary Policies § IV(F).

clause;[114] it does not change the meaning of the first clause. Underwriters have no duty to reimburse MBIA for any Loss until final disposition, although Underwriters may – "at their sole discretion" – do so. "The Court construes the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect."[115] Underwriters are not required to pay any defense costs until final disposition.

### C.   Condition Precedent

> No action shall lie against Underwriters unless, as a condition precedent thereto, the Assureds shall have fully complied with all of the terms of this Policy, nor until the amount of the Assureds' obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and Underwriters.[116]

When there is a contractual condition that has not been met, the insured's claim against the insurer is barred and is not ripe for adjudication.[117] Because MBIA has failed to satisfy a condition precedent with respect to the

---

[114]   *See* Defendants' Reply in Further Support of Their Motion to Dismiss and in Opposition to Plaintiff's Cross-Motion for Partial Judgment on the Pleadings at 8-9.

[115]   *Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of America*, 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012).

[116]   Primary Policies § X.

[117]   *See Sirob Imps., Inc. v. Peerless Ins. Co.*, 958 F. Supp. 2d 384, 388–90 (E.D.N.Y. 2013).

Municipal Claims[118] – *i.e.,* the resolution of the underlying Claims – it cannot assert a Claim for breach of contract.

### D.   The Transformation Claim

The CQS Claim was still pending when the Complaint was filed.[119] Subsequently, MBIA's counsel made Underwriters aware of the final disposition of the CQS Claim.[120]

This Court "must take judicial notice if a party requests it and the court is supplied with the necessary information."[121]  This Court can take judicial notice of a fact "that is not subject to reasonable dispute because it: . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[122]  "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings."[123]  Because consideration is

---

[118]     *See* Compl. ¶ 41.

[119]     *See id.* ¶ 55.

[120]     *See* MBIA's Letter to Underwriters RE CQS.

[121]     Fed. R. Evid. 201(c)(2).

[122]     Fed. R. Evid. 201(b)(2).

[123]     *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (SEC filings).

extended to "matters of which judicial notice may be taken" on a Rule 12(b)(6)

motion to dismiss[124] and on a Rule 12(c) motion for judgments on the pleadings,[125]

the Court takes notice that the CQS claim has been finalized.  MBIA can seek

recovery of Loss from the Transformation Cases because, unlike the Municipal

Cases, all underlying lawsuits involving identical or interrelated wrongful acts

have a final disposition.

### E.    Coverage Defenses

Underwriters argue that they still have two separate coverage defenses

even if MBIA's Transformation Claim is timely: (1) MBIA's acts were not

professional services and (2) MBIA's Transformation falls within the Financial

Guarantee Exclusion.  I will discuss each in turn.

### 1.    MBIA's Actions Constitute Professional Services

"Professional Services" includes "any past or present activities

allowed under the law and regulations governing services provided by [MBIA]

which are or were performed *for* [MBIA and/or its Subsidiaries] and, in addition

those activities, which are declared in the Application Form or which are

---

[124]     *Staehr v. Hartford Fin. Svcs. Group, Inc.*, 547 F.3d 406 (2d Cir. 2008).

[125]     *Faconti v. Potter*, 242 Fed. App'x 775, 777 (2d Cir. 2007).

commenced during the Policy Period."[126]

The Article 78 Action held that NYID's approval of MBIA's restructuring was legal and not arbitrary,[127] that the restructuring will aid the municipal bond market[128] and that MBIA had "retain[ed] sufficient surplus to support its obligations."[129]  The Transformation involved core operations of MBIA's business which are an ancillary part of MBIA's provision of insurance to its policy holders – namely, how to invest and allocate its available pool of assets to insure against different classes of claims.[130]  This activity is covered unless Underwriters can "rule out the possibility that [MBIA] performed covered professional services."[131]  Underwriters cannot do so.

While professional indemnity policies do not "protect against all

---

[126]    07-08 Primary Policy § II(L) (emphasis added); 08-09 Primary Policy § II(L) (". . . during the Policy Period and any other related services thereto").

[127]    See *ABN Amro Bank N.V.*, 962 N.Y.S.2d at 862-64.

[128]    See *id.* at 864.

[129]    *Id.* at 863.

[130]    See Plaintiff's Opposition to Defendants' Motion to Dismiss and Cross-Motion for Partial Judgment on the Pleadings at 6.

[131]    *Continental Cas. Co. v. JBS Constr. Mgmt., Inc.*, No. 09 Civ. 6697, 2010 WL 2834898, at *5 (S.D.N.Y. July 1, 2010).

business vicissitudes,"[132] what constitutes "Professional Services" is defined very broadly in the Primary Policies and thus encompasses the Transformation.  The Transformation goes to the heart of MBIA's business and therefore is considered a professional service.

### 2.      The Financial Guarantee Exclusion Is Not Applicable[133]

To show that a Claim is barred by a Policy exclusion, Underwriters must prove that they can bring the Transformation Claim "solely and entirely within th[at] policy exclusion."[134]  "The rule that insurance policies are to be construed in favor of the insured is most rigorously applied in construing the meaning of exclusions incorporated into a policy of insurance or provisions seeking to narrow the insurer's liability."[135]  The Underwriters raise only the Financial Guarantee Exclusion, which states:[136]

> Underwriters shall not be liable to make any payment in connection with any Claim . . . for legal liability assumed by

---

[132]     *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 700 (1980).

[133]     While there are other exclusions in the Policies, none are asserted by Underwriters as a bar to this Claim.

[134]     *Bodewes v. Ulico Cas. Co.*, 336 F. Supp. 2d 263, 272 (W.D.N.Y. 2004).

[135]     *Id.  Accord Hartford Fire Ins. Co. v. Mitlof*, 208 F. Supp. 2d 407, 411 (S.D.N.Y. 2002).

[136]     Primary Policies § III(I).

the Company not in the ordinary conduct of the Assureds Professional Services or any guarantee provided by the Assured as to the performance of investments . . . provided that, for the avoidance of doubt, this Exclusion shall not apply in respect of the insurance operations of the Assured. However, this policy excludes coverage of the financial guarantees made in insurance policies or similar instruments issued by the Assured.

Underwriters argue that the Financial Guarantee Exclusion would preclude coverage as the Transformation Cases revolve around "financial guarantees made in insurance policies or similar instruments issued by the Assureds."[137]  MBIA, by contrast, argues that because the Transformation Cases are matters "in respect of the insurance operations" of MBIA they are not covered by the exclusion.[138]

In the ABN Amro Action the court found that the plaintiffs "did not allege that the company failed to pay them on any outstanding claims, or even that they suffered any other monetary damages."[139]  Based on that finding the court held that the claim was not based on "financial guarantees made in insurance policies"[140] or that MBIA failed to pay out under their policies.  Accordingly, the

---

[137]    *Id.*

[138]    *Id.*

[139]    *ABN AMRO Bank. N.V. v. MBIA Inc.*, 916 N.Y.S.2d 12, 17 (1st Dep't 2011).

[140]    Primary Policies § III(I).

-29-

Financial Guarantee does not apply.

### F.    Declaratory Judgment

Because the Transformation Cases have all reached final disposition,

concern MBIA's professional services, and do not fall under any Policy

exclusions asserted by Underwriters, MBIA's claim for declaratory relief

regarding the Underwriters' duty to pay defense costs for the Transformation

Claim is ripe.  A judgment would "serve a useful purpose in clarifying or settling

the legal issues involved; and . . . would finalize the controversy and offer relief

from uncertainty."[141]  The Underwriters must make payment to MBIA on the

Transformation Claim under their Financial Institutions Professional Indemnity

Policy.

## VI.    CONCLUSION

For the foregoing reasons, the Underwriters' Motion to Dismiss is

GRANTED in regard to the Municipal Claims, and DENIED in regard to the

Transformation Claim.  MBIA's Motion for Judgment on the Pleadings for the

Transformation Claim is GRANTED.  A conference is scheduled for July 28,

2014 at 4:30 p.m.  The Clerk of the Court is directed to close these motions

[Docket Nos. 17 and 23].

---

[141]    *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d
384, 389 (2d Cir. 2005).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 16, 2014

**- Appearances -**

**For Plaintiff:**

Robin L. Cohen, Esq.
Kenneth H. Frenchman, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019
(212) 506-1770

**For Defendants:**

Edward J. Kirk, Esq.
Bryce K. Guingrich, Esq.
Clyde & Co US LLP
405 Lexington Avenue, 16th Floor
New York, NY 10174
(212) 710-3900